IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AMY BALDIN, an individual and as sole manager of LUGANO PROPERTIES 4, LLC, a Nevada Limited Liability Company, | 3:12-cv-648-AC |
| | FINDINGS AND RECOMMENDATION |
| Plaintiff, | |
| v. | |
| WELLS FARGO BANK, N.A., a National Bank registered to do business in Oregon; and WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A., | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Pending Motions*

Amy Baldin ("Baldin") filed a Second Amended Complaint ("SAC"), in her individual

capacity and as the sole manager of Lugano Properties 4, LLC, against Wells Fargo Bank, N.A. and

Wells Fargo Home Mortgage (collectively "Wells Fargo") alleging claims under state and federal

law arising from the breach of certain mortgage loan contracts for investment properties.

1 – FINDINGS AND RECOMMENDATION

Specifically, Baldin alleges state common law claims for breach of contract, intentional infliction of severe emotional distress, false light, defamation and unjust enrichment. Additionally, she alleges statutory claims, under both state and federal law, for violations of the Oregon Uniform Trade Practices Act, OR. REV. STAT. §§ 646.605-646.656, the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p. Baldin seeks monetary, injunctive and declaratory relief, including a request that pursuant to 28 U.S.C. § 2201 this court determine whether her transfer of certain property was an "exempt transfer under the Garn-St. Germain Depository Institutions Act." (Second Am. Compl. ¶ 89.)

Baldin filed a Motion for Partial Summary Judgment seeking an entry of judgment against Wells Fargo on her breach of contract claim. Wells Fargo opposes Baldin's motion and, additionally, filed a Motion to Dismiss Baldin's SAC, with prejudice, under Rule 12(b)(6) for failure to state a claim.[1] According to Wells Fargo, it was Baldin who breached the contract between them and, as such, all of her claims must fail. Oral argument was heard and, for the reasons that follow, Baldin's Motion for Partial Summary Judgment should be denied; and Wells Fargo's Motion to Dismiss should be granted, in part, and denied, in part.

*Factual Background*

Baldin is a resident of Las Vegas, Nevada. (Second Am. Compl. ¶ 1.) In September 2006, Baldin and her then-husband, Jeffrey Schoeffner ("Schoeffner"), obtained a loan from Wells Fargo in the amount of $324,675, secured by a deed of trust on a multi-family rental property located at 2410 NE Multnomah Street, Portland, Oregon, 97232 ("Multnomah Property"). (Second Am.

---

[1]Wells Fargo asks the court to strike or disregard Baldin's declaration filed in support of her opposition to the Motion to Dismiss. The court disregarded that declaration.

2 – FINDINGS AND RECOMMENDATION

Compl. ¶¶ 4,10, 42; Brian T. Kiolbasa Decl. Ex. 1,[2] June 6, 2012.)  The deed of trust on the

Multnomah Property was recorded in the Multnomah County Official Records on September 27,

2006, as document number 2006-179774.  (Kiolbasa Decl. Ex. 1.)

In December 2007, Baldin and Schoeffner obtained another loan from Wells Fargo in the

amount of $492,000, secured by a deed of trust on the multi-family rental property located at

288–294 Cervantes Circle, Lake Oswego, Oregon 97035 ("Cervantes Property").  (Second Am.

Compl. ¶¶ 2, 10, 36; Kiolbasa Decl. Ex. 2.)  The deed of trust on the Cervantes Property was

recorded in the Multnomah County Official Records on December 28, 2007, as document number

2007-219627.  (Kiolbasa Decl. Ex. 2.)

The trust deeds securing the Multnomah Property and the Cervantes Property provide, among

other terms, that:

> Each trust deed is made to secure the repayment of the loan that had been extended,
> and the borrowers' performance of the covenants and agreements under the trust deed
> and note it secures;

(Kiolbasa Decl. Ex. 1 at 3; Ex. 2 at 3);

> Borrowers agree to pay not only principal and interest, but also "Escrow Items" as
> defined by the trust deeds, which includes property taxes;

(Kiolbasa Decl. Ex. 1 at 4-5; Ex. 2 at 3-5);

---

[2]The exhibits attached to the Kiolbasa Declaration may be considered by the court at this
stage of the proceedings as those exhibits are either a matter of public record and/or Baldin's
SAC relies upon those documents.  *See* FED. R. EVID. 201; *see also Parrino v. FHP, Inc.*, 146
F.3d 699, 706 (9th Cir. 1998) (court may consider documents on which plaintiff's claims are
predicated "even if the plaintiff's complaint does not explicitly refer to" those documents),
superseded by statute on other grounds, *Abrego v. The Dow Chemical*, 443 F.3d 676 (9th Cir.
2006); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (when determining
whether the complaint fails to state a claim, the court may take "judicial notice of matters of
public record outside the pleadings").

3 – FINDINGS AND RECOMMENDATION

> If borrowers fail to pay the "Escrow Items," Wells Fargo may pay on the borrowers' behalf, and may establish an escrow account which borrowers must pay;

(Kiolbasa Decl. Ex. 1 at 5; Ex. 2 at 5);

> If all or any part of the property or an interest in the property is sold or transferred without Wells Fargo's prior written consent, Wells Fargo may require immediate payment in full of all sums secured by the trust deed;

(Kiolbasa Decl. Ex. 1 at 13; Ex. 2 at 11).

Additionally, both trust deeds include a "1– Family Rider (Assignment of Rents)," which contains a cross-default provision. (Kiolbasa Decl. Ex. 1 at 22; Ex. 2 at 21.) The cross-default provisions state: "borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the [trust deed] and Lender may invoke any of the remedies permitted by the [trust deed]." (Kiolbasa Decl. Ex. 1 at 22; Ex. 2 at 21.)

On January 13, 2010, Baldin and Schoeffner executed a warranty deed transferring the Cervantes Property to Lugano Properties 4, LLC ("Lugano 4"), a Nevada limited liability company.[3] (Second Am. Compl. ¶ 3.) Baldin alleges "Lugano 4 is a Nevada Series LLC and it forms the corpus of AJS8 Nevada Trust, . . . an irrevocable trust originally settled by [] Baldin and [] Schoeffner for estate planning purposes. (Second Am. Compl. ¶ 3.) On that same day, the Multnomah Property was transferred into Soho Pacific Rentals 3 ("Soho 3"), another Nevada Series LLC, which Baldin alleges also forms part of the AJS8 Nevada Trust ("Nevada Trust"). (Second Am. Compl. ¶ 5.)

At some point thereafter, Baldin and Schoeffner divorced, and Baldin became sole manager of Lugano 4 and other Nevada Series LLCs, including Soho 3. (Second Am. Compl. ¶ 7.) Following

---

[3] Wells Fargo contends searches on both the Nevada and Oregon Secretary of States' websites do not return any results for an entity including the words "Lugano Properties." (*See* Kiolbasa Decl. Exs. 3-4.)

4 – FINDINGS AND RECOMMENDATION

the divorce, Baldin was responsible for all mortgage and tax payments on behalf of the properties in the Nevada Series LLCs. (Second Am. Compl. ¶ 7.) Baldin alleges all mortgage loan payments for both properties were made timely, and she accrued substantial equity in the Cervantes Property. (Second Am. Compl. ¶ 20.)

According to Baldin, the stress of her divorce caused her to overlook the due date of the property tax payments for the Cervantes and Multnomah Properties for the 2010-11 tax period. (Second Am. Compl. ¶ 26.) Upon being notified of the delinquency by Multnomah County Division of Assessment, Recording & Taxation, Baldin immediately made a payment of the 2010-11 property taxes due, including penalties and late fees, plus the first installment on the 2011-12 property taxes. (Second Am. Compl. ¶ 26.) This occurred in late September or early October of 2011. Baldin called Wells Fargo customer service to inform them of these circumstances. Additionally, she provided proof of payment to Wells Fargo. (Second Am. Compl. ¶ 26.) Wells Fargo also was notified of the delinquency by the Multnomah County Tax Assessor, and it also paid the overdue taxes. (Second Am. Compl. ¶ 26.) Thereafter, Wells Fargo established an escrow account for the payment of property taxes on both the Cervantes and Multnomah Properties going forward. (Second Am. Compl. ¶ 26.)

As a result of the tax impound escrow account, Baldin alleges Wells Fargo had "impounded and added to the mortgage loan balances the amounts it already paid for these taxes as well as for future property tax payments thereby inflating the loan value." (Second Am. Compl. ¶ 26.) Although Oregon law dictates only Wells Fargo may request a refund of overpaid property taxes, the Bank refused to seek a refund of the property taxes it paid. (Second Am. Compl. ¶ 27.) Baldin alleges Multnomah County Assessor did issue a full refund to Wells Fargo for the overpayment of

5 – FINDINGS AND RECOMMENDATION

property taxes, yet Wells Fargo refused to apply the refund to the tax impound account or credit her for the payment. (Second Am. Compl. ¶ 28.)

Subsequently, Wells Fargo learned the Cervantes Property was transferred to Lugano 4. On February 3, 2012, approximately two years following Baldin's conveyance of the Multnomah and Cervantes Properties to the Nevada Trust, Wells Fargo provided Baldin formal notice the Cervantes Property was in default because it had been transferred without Wells Fargo's prior written consent. (Second Am. Compl. ¶ 21.) Wells Fargo accelerated the mortgage and exercised the due-on-sale clause in the trust deed. (Second Am. Comp. ¶ 21.) Thereafter, Wells Fargo declined to accept Baldin's February 2012 mortgage payment for the Cervantes Property, but accepted payment for the Multnomah Property. (Second Am. Compl. ¶ 22.)

A short time later Baldin filed this lawsuit. Following initiation of this action, Wells Fargo reversed its acceptance of Baldin's most recent mortgage payment for the Multnomah Property. (Second Am. Compl. ¶ 29.) Although Wells Fargo initially accepted and credited the March 2012 mortgage payment, it subsequently reversed the credit and transferred the amount to an "unapplied funds account," thus, treating the mortgage as if it had not been paid, thereby adding at least $1,350 in additional fees per month to the mortgage payment. (Second Am. Compl. ¶ 29.) Nevertheless, to date, Wells Fargo has not declared the mortgage on the Multnomah Property to be in default, nor has it attempted to accelerate that loan.

Although Wells Fargo refused to accept Baldin's timely payments, it immediately reported the payments as delinquent to credit reporting agencies, thereby damaging Baldin's credit score. (Second Am. Compl. ¶ 31.) While Baldin is challenging these credit reports, certain creditors have cancelled her credit lines due to the derogatory information. (Second Am. Compl. ¶¶ 31, 32.) Baldin

alleges that although she is represented by counsel, Wells Fargo and its third-party agents have begun calling her on a daily basis to collect the allegedly late payments. (Second Am. Compl. ¶ 33.) Baldin alleges Wells Fargo's actions, among other things, have added thousands of dollars to the balance of the loans on the Cervantes and Multnomah Properties, thereby damaging her interest in those Properties as well as harming her credit. (Second Am. Compl. ¶ 33.)

*Discussion*

I.    <u>Wells Fargo's Motion to Dismiss</u>

    *A.    Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

B.    *Analysis*

Wells Fargo moves for dismissal of Baldin's Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice, for failure to state a claim for which relief may be granted. Specifically, Wells Fargo contends Baldin breached the terms of the contract between the parties as the terms of the trust deeds securing Baldin's loans "clearly provide that the properties may not be transferred or sold without Wells Fargo's express consent." (Defs.' Mem. Dismiss 2.) Wells Fargo further maintains that Baldin's reliance on certain provisions of Garn-St. Germain Depository Institutions Act of 1982, Pub. L. 97-320, 96 Stat. 1469 (1982) ("Garn-St. Germain" or "the Act"), 12 U.S.C. §§ 1701j-3, to prevent Wells Fargo from enforcing the due-on-sale clause must fail because the provisions upon which she relies apply only to properties occupied by the transferor. Additionally, Wells Fargo contends all of Baldin's other causes of action are grounded in her premise that Wells Fargo is barred from enforcing the due-on-sale clause and, because it is Baldin who breached the contract, each of those claims fail. Finally, Wells Fargo maintains that each of Baldin's claims fail "for independent reasons[.]" (Defs.' Mem. Dismiss 2.)

1. Breach of Contract

In her First Claim for Relief, Breach of Contract, Baldin alleges:

> Wells Fargo's refusal to accept payment on both mortgages, its failure to remit payments to the loan owners, and its decision to initiate foreclosure proceedings on the Cervantes Property have breached these mortgage loan contracts thereby breaching its duty to act in good faith towards Plaintiff as well as its general common law duty to exercise reasonable care to prevent foreseeable harm to Plaintiff.

(Second Am. Compl. ¶ 46.) Baldin argues the transfer of title of the Cervantes Property to their Nevada Series LLC, held by the Nevada Trust, is a protected transfer under Garn -St. Germain and, therefore, exempt from the acceleration of the due-on-sale clause set forth in paragraph 18 of the

deed of trust. (Second Am. Compl. ¶ 37; *see also* 12 U.S.C. §§ 1701j-3(d)(7) and (8).) As such, Wells Fargo's acceleration of the loan on that property breached the mortgage loan contract. Similarly, Baldin contends the dissolution of Baldin's and Schoeffner's marriage "vested the sole management of Lugano 4 in [] Baldin while preserving her beneficial interest in the Trust, and by extension, the Cervantes Property." (Second Am. Compl. ¶ 38.) According to Baldin, this transfer of interest is also protected by § 1701j-3(d)(7) of the Act and, once again, Wells Fargo's acceleration of the mortgage loan was a breach of that contract.

Section 1701j-3(a)(1) provides:

the term "due-on-sale clause" means a contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent[.]

12 U.S.C. § 1701j-3(a)(1). The relevant exemptions preventing a lender such as Wells Fargo from exercising its option pursuant to a due-on-sale clause are found at § 1701j–3(d)(7) and (8), and state:

With respect to a real property loan secured by a lien on residential real property containing less than five dwelling units, including a lien on the stock allocated to a dwelling unit in a cooperative housing corporation, or on a residential manufactured home, a lender may not exercise its option pursuant to a due-on-sale clause upon–

. . . .

(7) a transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the borrower becomes an owner of the property;

(8) a transfer into an inter vivos trust in which the borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property[.]

12 U.S.C. §§ 1701j-3(d)(7) and (8).

9 – FINDINGS AND RECOMMENDATION

The court turns first to the provisions relied upon by Wells Fargo to justify its decision to exercise the due-on-sale clause against the Cervantes Property. With limited exceptions, "the exercise by the lender of its option pursuant to such a [due-on-sale] clause shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the lender and the borrower shall be fixed and governed by the contract." 12 U.S.C. § 1701j-3(b)(2). In this case, section 18 of the deed of trust securing the Cervantes Property provides: "[i]f all or any part of the Property or any Interest in the Property is sold or transferred . . . without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument." (Kiolbasa Decl. Ex. 2 at 11.) According to Wells Fargo, Garn-St. Germain is intended to protect the lender's enforcement of a due-on-sale clause unless one of the exceptions set forth in the Act are met. (Defs.' Mem. Dismiss 7.) Wells Fargo points to the implementing regulations,[4] which provide: "[t]he purpose of this permanent preemption of state prohibitions on the exercise of due-on-sale clauses by all lenders . . . is to reaffirm the authority of Federal savings associations to enforce due-on-sale clauses, and to confer on other lenders generally comparable authority with respect to the exercise of such clauses." 12 C.F.R. § 591.1(b).

Wells Fargo contends Baldin is unable as a matter of law to state a claim for breach of contract because the Act does not apply to the transfer of the Cervantes Property. According to Wells Fargo, Baldin's claim for breach of contract fails for two reasons: (1) Garn-St. Germain does not apply to the Cervantes Property because Baldin is not an occupant of that property; and, (2) in

---

[4]Congress provided the rules and regulations implementing the Act shall be made by the Federal Home Loan Bank Board (the "Board"), in consultation with the Comptroller of the Currency and the National Credit Union Administration Board. *See* 12 U.S.C. § 1701j-3(e)(1). The implementing regulations as set forth by the Board appear at 12 C.F.R. §§ 591.1-591.6.

any event, the transfer to an LLC clearly falls outside of the scope of the Act. (Defs.' Mem. Dismiss 7.) Thus, the court must consider if either of these two grounds asserted by Wells Fargo can defeat Baldin's breach of contract claim as a matter of law.

(a) Impact of Occupancy

First, Wells Fargo contends because Baldin is not an occupant of the Cervantes Property, the Act does not bar it from enforcing the due-on-sale clause. According to Wells Fargo, because Baldin resides in Clark County, Nevada, and the Cervantes Property is a multi-family investment property located in Oregon, she is not an occupant of the subject property and, therefore, her "attempt to state a claim for breach of contract fails as a matter of law." (Defs.' Mem. Dismiss 8.) Wells Fargo explains the implementing regulations use language similar to that of the Act and provide, in part: "the exercise of due-on-sale clauses in loans originated by lenders . . . shall be governed exclusively by the terms of the loan contract, and all rights and remedies of the lender and the borrower shall be fixed and governed by that contract." 12 C.F.R. § 591.4(b); 12 U.S.C. § 1701j-3(b)(2). Additionally, Wells Fargo argues that while the regulations do set forth certain limitations on the exercise of due-on-sale clauses, those limitations only apply "[w]ith respect to any loan on the security of a home occupied or to be occupied by the borrower[.]" *See* 12 C.F.R. §§ 591.5 and 591.5(b); *see also* 12 C.F.R. § 591.5(b)(1)(vi) (lender may not exercise option pursuant to due-on-sale clause upon "[a] transfer into an *inter vivos* trust in which the borrower is and remains the beneficiary and occupant of the property . . . .").

According to Baldin, however, there is a conflict between the Act, which does not require owner occupancy of a property to be exempt from a due-on-sale clause when conveying property to

an *inter vivos* trust, and the implementing regulations, which later included this requirement.

Specifically, § 1701j-3(d)(8) provides:

> With respect to a real property loan secured by a lien on residential real property containing less than five dwelling units . . . a lender may not exercise its option pursuant to a due-on-sale clause upon – (8) a transfer into an *inter vivos* trust in which the borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property[.]

12 U.S.C. § 1701j-3(d)(8).  In contrast, the implementing regulation states:

> With respect to any loan on the security of a home occupied or to be occupied by the borrower, (1) A lender shall not . . . exercise its option pursuant to a due-on-sale-clause upon:  (vi) A transfer into an *inter vivos* trust in which the borrower is and remains the beneficiary and occupant of the property, unless as a condition precedent to such transfer, the borrower refuses to provide the lender with reasonable means acceptable to the lender by which the lender will be assured of timely notice of any subsequent transfer of the beneficial interest or change in occupancy.

12 C.F.R. § 591.5(b)(1)(vi).  Thus, Baldin contends the implementing regulations are inconsistent with the Act itself and, consequently, the court must engage in statutory interpretation.  (Pl.'s Opp. 9-11.)

Here, there is a clear conflict between the relevant provision of the statute and the implementing regulation.  Specifically, the Act grants an exemption from the due-on-sale clause when the owner (borrower) of residential real property, containing less than five dwelling units, transfers the encumbered property into an *inter vivos* trust provided:  (1) the borrower remains a beneficiary of the trust; and (2) the transfer does not include a transfer of rights of occupancy in the property.  *See* 12 U.S.C. § 1701j-3(d)(8).  In contrast, the implementing regulation limits the protection from a due-on-sale clause propounded by Garn-St. Germain by requiring the owner (borrower) of the real property *to occupy* the subject property.  *See* 12 C.F.R. § 591.5(b)(1)(vi).  Specifically, the regulation omits the statutory language "containing less than five dwelling units"

12 – FINDINGS AND RECOMMENDATION

and instead authorizes an exemption only to a "loan on the security of a home occupied . . . by the buyer." *Id.* Thus, this implementing regulation both narrows the Congressionally authorized exemption and, arguably, renders a portion of the express statutory language as having no effect. Such a result is contrary to one of the fundamental tenants of statutory interpretation; namely, that meaning and effect should be given to every word of a statute. *See, e.g., United States v. LSL Biotechnologies*, 379 F.3d 672, 679 (9th Cir. 2004) ("Our task when interpreting legislation is to give meaning to the words used by Congress; we strive to avoid constructions that render words meaningless.")

In *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which involved the EPA's interpretation of the federal Clean Air Act, the Supreme Court created a two-step process for reviewing an agency's interpretation of an agency-administered statute. When applying *Chevron*, federal courts first ask "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. However, if Congress's intent is not clear – if there is an ambiguity or gap in the statutory scheme – the federal court proceeds to the second step in the analysis, asking "whether the agency's answer is based on a permissible construction of the statute." *Id* at 843.

The court finds that under step one of the analysis set forth in *Chevron*, Congress indeed addressed the precise issue at hand in this case, *i.e.*, whether a non-occupant borrower may qualify for an exemption from the due-on-sale clause when she transfers the property into an *inter vivos* trust. It is clear from a plain reading of the statute that the borrower is not required to occupy the

subject property but, rather, only that the "real property loan is secured by a lien on residential real property containing less than five dwelling units. . . ." 12 U.S.C. § 1701j-3(d)(8). Further, as mentioned above, a contrary conclusion may render a portion of the express language meaningless. Finally, Congress certainly could have restricted these exemptions to loans on the security of a home "occupied by the borrower" but chose not to. Thus, there is no need for this court to proceed to step two of the analysis. The language of the statute is clear and the Board may not disregard the intent of Congress when it promulgates regulations to aid in administering a federal statute. *See Manhattan General Equipment Co v. Commissioner of Internal Revenue*, 297 U.S. 129, 134 (1936) (Agency is authorized "to adopt regulations to carry into effect the will of congress as expressed by the statute.") The court finds the Board's implementing regulation set forth in 12 C.F.R. § 591.5(b)(1)(vi) to be contrary to Congress's clear intent and is *ultra vires* to § 1701j-3(d)(8) of the Act. *See Schneider v. Chertoff*, 450 F.3d 944, 952-56 (9th Cir. 2006) ("Because the Secretary's implementing regulation is contrary to Congress's clear intent . . . the regulation is in conflict with, and is *ultra vires* to, the Nursing Relief Act."). Accordingly, Wells Fargo's contention that its exercise of the due-on-sale clause in the parties' mortgage contract was authorized by the Act should fail and its motion to dismiss Baldin's Breach of Contract claim on this ground should be denied.

(b) Impact of Transfer to the Nevada Trust via Lugano LLC

Next, Wells Fargo next argues the "plain language of the Act is incongruent to the facts of this case, and does not support Baldin's argument." (Defs.' Mem Dismiss 9.) According to Wells Fargo, Baldin's reliance on Garn-St. Germain must fail because she transferred the Cervantes Property into an LLC, not into an *inter vivos* trust. (Second Am. Compl. ¶ 3.) Wells Fargo maintains the burden is on Baldin to show the Act protects transfers from a borrower, to an

intermediate corporate entity, which then combine with other corporate entities to form part of a

trust. (Defs.' Mem. Dismiss. 9.)

> Baldin alleges in her SAC:

> The Cervantes Property was then transferred by Ms. Baldin and Mr. Schoeffner to LUGANO PROPERTIES 4, LLC, a Nevada Limited Liability Company (hereinafter "Lugano 4"), on January 13, 2010. Lugano 4 is a Nevada Series LLC and it forms the corpus of AJS8 Nevada Trust (hereinafter the "Trust"), an irrevocable trust originally settled by Ms. Baldin and Mr. Schoeffner for estate planning purposes. Lugano 4 and the Trust were created contemporaneously. This transfer is memorialized by Deed No. 2010006829 on file at the Multnomah County Recorder's Office. At the time of transfer to Lugano 4, the managers of the LLC were Ms. Baldin and Mr. Schoeffner.

> . . . .

> Plaintiff contends that the transfer to the Series LLC and the inclusion of the Series LLC in the Trust is a protected inter-vivos transfer exempt from acceleration of the due on sale clause found in Paragraph 18 of the Deed of Trust through the operation of 12 U.S.C. §1703J-3(d)(8).

(Second Am. Compl. ¶¶ 3 and 87.)

It is undisputed Baldin transferred ownership of the Cervantes Property to Lugano 4 LLC

without the consent of Wells Fargo. (Second Am. Compl. ¶ 3; Kiolbasa Decl. Ex. 5 (Warranty Deed

by which Baldin and Schoeffner convey the Cervantes Property to Lugano Properties 4 LLC).)

Baldin, however, insists the Cervantes Property transfer was a protected *inter-vivos* transfer. Baldin

points to no authority, *i.e.*, statutory language, case law, legislative history, or the contracts between

the parties, to support her claim here that a transfer to an intermediate form of ownership, the Lugano

4 LLC, prior to transfer to the *inter vivos* trust is allowed under § 1701j-3(d)(8). Rather, she simply

argues the Act does not expressly prohibit such a transfer, and Wells Fargo cannot provide authority

to the contrary. (Pl.'s Opp. 11.)

15 – FINDINGS AND RECOMMENDATION

At this stage of the proceedings it is Baldin's burden to show "the factual allegations that are taken as true *must plausibly suggest an entitlement to relief*, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis added). The statutory language is clear; namely, an exemption from the due-on-sale clause is allowed upon "a transfer into an *inter vivos* trust." 12 U.S.C. § 1701j-3(d)(8). In the absence of any legal authority, the court is unwilling to extend the exemption set forth in § 1701j-3(d)(8) by reading into it language it does not contain. Thus, even accepting as true the factual allegations in Baldin's SAC, she failed to satisfy the plausibility standard of *Twombly* and *Iqbal*. Accordingly, Wells Fargo's motion to dismiss Baldin's claim for breach of contract because the Cervantes Property was transferred to an LLC held within the Nevada Trust should be granted, without prejudice.

### 2. Unconscionable Business Practices

In her Second Claim for Relief, Violation of Uniform Deceptive Trade Practices Act, Baldin alleges various actions by Wells Fargo including, but not limited to, the initiation of foreclosure proceedings on the Cervantes Property, the refusal to accept payment of the Cervantes Property's mortgage and the acceptance and subsequent refusal to apply a duly tendered payment to the Multnomah Property's mortgage, were unconscionable business practices within the meaning of OR. REV. STAT. § 646.607 and, thus, a violation of Oregon's Unlawful Trade Practices Act ("UTPA").

Wells Fargo seeks dismissal of Baldin's UTPA claims on two grounds. First, Wells Fargo contends Baldin failed to allege an "unconscionable tactic" as that term is defined by the UTPA. Additionally, Wells Fargo insists the UTPA's scope does not include the commercial endeavors at issue here.

16 – FINDINGS AND RECOMMENDATION

(a) Unconscionable Tactic

Section 646.607 provides, in part:

A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person:

(1) Employs any unconscionable tactic in connection with the sale, rental or other disposition of real estate, goods or services, or collection or enforcement of an obligation[.]

OR. REV. STAT. § 646.607(1). The term "unconscionable tactic" is defined to include, but not

limited to, actions by someone who:

(a) Knowingly takes advantage of a customer's physical infirmity, ignorance, illiteracy or inability to understand the language of the agreement;

(b) Knowingly permits a customer to enter into a transaction from which the customer will derive no material benefit;

(c) Permits a customer to enter into a transaction with knowledge that there is no reasonable probability of payment of the attendant financial obligation in full by the customer when due; or

(d) Knowingly takes advantage of a customer who is a disabled veteran, a disabled servicemember or a servicemember in active service, or the spouse of a disabled veteran, disabled servicemember or servicemember in active service.

OR. REV. STAT. § 646.605(9). In its request for dismissal of Baldin's UTPA claim, Wells Fargo

maintains Baldin's this claim must be dismissed because her supporting allegations "clearly do [not]

fall within the categories of actions the UTPA prohibits." (Defs.' Mem. Dismiss 11.)

Although the express language of the statute allows that an "unconscionable tactic" may

include, *but is not limited to*, the enumerated actions, *see* OR. REV. STAT. § 646.605(9) (emphasis

added), Baldin does not set forth any factual allegations in her SAC to support such an alternative

basis for the court to find an unconscionable action. In fact, with the exception of her allegation of

"daily telephone calls to collect the alleged[ly] late mortgage payments on the Multnomah and Cervantes Properties," all of the purportedly unconscionable actions taken by Wells Fargo and charged by Baldin appear to be authorized by the trust deeds. Thus, Wells Fargo's motion to dismiss Baldin's Oregon's UTPA on this ground should be granted, without prejudice. Accordingly, the court need not reach Wells Fargo's alternative basis for dismissal of Baldin's UTPA claim, *i.e.*, the Cervantes Property and the Multnomah Property were investment properties and, as such, do not qualify as "real estate, goods or services" under the UTPA.

       3.  Fair Credit Reporting Act

In her Third Claim for Relief, a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, Baldin alleges she was harmed when Wells Fargo "knowingly reported and continue[d] to report inaccurate and misleading information to the credit reporting agencies regarding the mortgage loans." (Second Am. Compl. ¶ 61.) Specifically, Baldin charges Wells Fargo reported to various credit agencies that she paid late on both mortgages to various credit agencies, which was misleading and inaccurate because Baldin paid in a timely manner and it was Wells Fargo that refused to accept the payments. (Second Am. Compl. ¶ 60.)

Wells Fargo seeks dismissal of this claim on the ground there is no private right of action for her allegations against it for reporting inaccurate information. Alternatively, Wells Fargo maintains that, to the extent Baldin is permitted to bring a private claim under FCRA, she failed to take the necessary steps to "trigger its provisions." (Defs.' Mem. Dismiss 13.) Specifically, Wells Fargo contends Baldin does not allege she initiated a dispute, *i.e.*, provided notice as required by the provisions of the FCRA.

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). As such the FCRA sought to make "consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). In addition, to ensure credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to credit reporting agencies ("CRA"), called "furnishers" in the statute. Section 1681s-2 sets forth "[r]esponsibilities of furnishers of information to consumer reporting agencies," delineating two categories of responsibilities. Section 1681s-2(a), among other things, details the duty "to provide accurate information." Section 1681s-2(b) imposes a second category of duties on furnishers of information. These obligations are triggered "upon notice of dispute[]," *i.e.*, when a person who furnished information to a CRA receives notice from the CRA the consumer disputes the information. *See* 15 U.S.C. § 1681i(a)(2) (requiring CRAs promptly to provide such notification containing all relevant information about the consumer's dispute). Section 1681s-2(b) provides that, after receiving a notice of dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) . . .;
>
> (C) report the results of the investigation to the [CRA];
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information . . .; and

> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . . (i) modify . . . (ii) delete [or] (iii) permanently block the reporting of that item of information [to the CRAs].

15 U.S.C. § 1681s-2(b)(1). These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b). *See id.*; *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002).

In sum, § 1681s–2(a) sets forth the duty for furnishers of information to provide accurate information to a consumer reporting agency, and § 1681s-2(b) sets forth the duties of furnishers of information once a consumer reporting agency gives the furnisher notice of a consumer's dispute over the completeness or accuracy of information provided by the furnisher to the consumer reporting agency. 15 U.S.C. §§ 1681s-2(a) and 1681s-2(b). The Ninth Circuit squarely addressed the question of a consumer's private right of action under this section in *Nelson*, and held consumers do not have such a private right of action. 282 F.3d at 1059. If a consumer disputes the accuracy of credit information, the FCRA requires furnishers to report that fact when reporting the disputed information. Section 1681s-2(a)(3) provides: "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." The statute expressly provides that a claim for violation of this requirement can be pursued only by federal or state officials, and not by a private party. *See* 15 U.S.C. § 1681s-2(c)(1) ("Except [for circumstances not relevant here], sections 1681n and 1681o of this title [providing private right of action for willful and negligent violations] do not

apply to any violation of . . . subsection (a) of this section, including any regulations issued thereunder."); *see also Nelson*, 282 F.3d at 1059. Thus, Wells Fargo is correct that Baldin does not have standing to sue for violations of § 1681s-2(a) of the FCRA. Accordingly, Baldin may not proceed against Wells Fargo under the provisions of § 1681s-2(a).

In *Nelson*, however, the Ninth Circuit also held Congress intended a private right of action against "any person," including a furnisher of information, for violations of § 1681s–2(b) of the FCRA, based upon the plain language of the statute and the FCRA's legislative history. *Nelson*, 282 F.2d at 1060. While a private right of action is permitted for a violation of the 15 U.S.C. § 1681s–2(b) duties, those duties only "arise after the furnisher receives notice of a dispute from a credit reporting agency; notice of a dispute received directly from the consumer does not trigger furnishers' duties." *See* 15 U.S.C. § 1681s-2(b) ("After receiving notice . . . of a dispute . . . .").

Thus, Baldin may challenge Wells Fargo's failure to notify the CRAs of inaccurate information only after Baldin challenges that information and the Bank receives notice of her dispute as required under § 1681s-2(b). There are no allegations, however, in her SAC that Wells Fargo has been notified by any of the CRAs regarding Baldin's dispute with respect to the accuracy of the information provided by the Bank. Accordingly, Wells Fargo's motion to dismiss Baldin's Third Claim for Relief should be granted, without prejudice, in the event Baldin can plead the necessary allegation that Wells Fargo received the required notice and failed to act in accordance with the requirements of § 1681s-2(b).

#### 4. Severe Infliction of Emotional Distress

In her Fourth Claim for Relief, Intentional Infliction of Severe Emotional Distress ("IIED"), Baldin alleges:

> Defendants' deceptive trade practices, including but not limited to their attempt to conduct an illegal, fraudulent or willfully oppressive sale of the Cervantes Property without legal authority, the establishment and retention of the tax impound account, and the continued inaccurate credit reporting are intentional actions meant to inflict severe emotional distress on the Plaintiff.

(Second Am. Compl. ¶ 66.)  Further, Baldin alleges intentional conduct by Wells Fargo that was outside "the bounds of socially tolerable conduct" and resulted in her suffering medical harm. (Second Am. Compl. ¶¶ 66-71.)

Wells Fargo seeks dismissal of this claim on the ground Baldin fails to state a claim for IIED under the standard set forth by the Oregon Supreme Court in *McGanty v. Staudenraus*, 321 Or. 532, 543 (1985).  Specifically, to state a claim for IIED in Oregon, a plaintiff must allege:

> (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

*Id.* (citation omitted).  According to Wells Fargo, Baldin has not "described any purported 'severe emotional distress' . . . with any particularity, and as a result, her claim is entirely conclusory and should be dismissed at the outset." (Defs.' Mem. Dismiss 14.)  Additionally, Wells Fargo argues any emotional distress Baldin suffered was caused by her actions in transferring the Cervantes Property and failing to make timely property tax payments.  It was this conduct that caused Wells Fargo's "election to accelerate the loan." (Defs.' Mem. Dismiss 14.)

As set forth above, the court concluded the transfer of the Cervantes Property was not protected by one of the exemptions set forth in Garn-St. Germain and Wells Fargo acted pursuant to the parties' agreement when it exercised the due-on-sale clause against that Property. Additionally, Baldin acknowledges she was delinquent in paying the property taxes.  Moreover, the

establishment and retention of the tax impound account was authorized by the trust deeds under the circumstances here. Thus, the remaining allegations in support of Baldin's IIED claim are grounded in Wells Fargo's "continued inaccurate credit reporting." (Second Am. Compl. ¶ 66.) Baldin maintains Wells Fargo intentionally made false reports she was late on her payments for the purpose of inflicting emotional distress. Baldin alleges Wells Fargo reported her payments as late to the CRAs, and directed Wells Fargo employees to call Baldin multiple times each day to demand payments it would not ultimately accept. Additionally, Baldin contends Wells Fargo defied court orders prohibiting negative and inaccurate reporting with the purpose of causing her emotional harm. Finally, Baldin charges Wells Fargo's conduct was intentional and done with the purpose of inflicting emotional distress on her.

Baldin alleges each of the elements required under Oregon law to state a claim for IIED; namely, that Wells Fargo acted intentionally to inflict emotional distress and did, in fact, cause Baldin severe emotional distress. Additionally, Baldin alleged Wells Fargo's conduct was an "extraordinary transgression of the bounds of socially tolerable conduct." (Second Am. Compl. ¶ 71.) At this stage of the proceedings, it is not incumbent upon Baldin to prove each of these factors but, instead, to set forth a cognizable claim that, if established, would provide a basis for relief. While it may be difficult for Baldin to prove Wells Fargo's conduct was "an extraordinary transgression of the bounds of socially acceptable conduct," *see McGanty*, 321 Or. at 543, it is premature for the court to find her IIED claim must fail as a matter of law. Accordingly, Wells Fargo's motion to dismiss Baldin's IIED claim should be denied.

### 5. Fair Debt Collection Practices Act

In her Fifth Claim for Relief, Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692c, Baldin alleges Wells Fargo violated § 805(a)(2) of the FDCPA, which prohibits debt collectors from contacting an individual represented by counsel. Baldin states Wells Fargo was "on notice that Plaintiff had retained counsel regarding the threatened foreclosure of the Cervantes Property as of February 29, 2012. However, debt collection agents working on behalf of Defendants have called Ms. Baldin multiple times each day beginning on March 1, 2012, and continuing through the date of this Second Amended Complaint." (Second Am. Compl. ¶ 74.) Wells Fargo seeks dismissal of this claim on the ground it is not a "debt collector" as defined by the FDCPA. Baldin filed no response in opposition to Wells Fargo's request for judgment as a matter of law and it appears she abandoned this claim.

Briefly, the FDCPA is a strict liability statute – it makes debt collectors liable for violations that are not knowing or intentional. *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1004-05 (9th Cir. 2008). To state a claim for relief under the FDCPA, Baldin must allege (1) Wells Fargo was collecting debt as a debt collector, and (2) its debt collection actions violated a federal statute. *See Jerman v. Carlisle, et al.*, __ U.S. __, 130 S. Ct. 1605, 1606 (2010) (citing 15 U.S.C. §§ 1692 et seq.). Here, the specific FDCPA provision at issue for liability purposes is § 1692c(a)(2), unlawful communication with a consumer who is represented by an attorney. The court does not reach the second issue of whether Wells Fargo's actions would otherwise merit relief, because the Bank does not fall within the definition of a debt collector. In fact, Wells Fargo is a creditor, not a debt collector, under the FDCPA.

Within the meaning of the FDCPA, a "debt collector" is "[1] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Excluded, however, from the definition of debt collector is:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F). Also, under the FDCPA, a creditor is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

In sum, an entity that collects its own debt, whether or not the debt is assigned in default, makes the entity a creditor, not a debt collector. Wells Fargo is attempting to collect a debt on its own behalf and, accordingly, is not a "debt collector" as that term is defined by the statute. *See* 15 U.S.C. § 1692a(6) (A "debt collector" under the FDCPA is either (1) "a person" the "principal purpose" of whose business is the collection of debts; or (2) "a person" who "regularly" collects debts on behalf of others.); *see also Rispoli v. Bank of America*, No. C11–362RAJ, 2011 WL 3204725, at *3 (W.D. Wash. July 1, 2011) ("[A]s a matter of law a 'debt collector' under the FDCPA cannot be a consumer's creditor."). This conclusion is in accordance with the legislative history of the FDCPA, which highlights Congress's intent to police the coercive, unrestrained

activities of third-party debt collectors as distinct from debt servicers. *See McKinney v. Cadleway*, 548 F.3d 496, 501 (7th Cir. 2008). Additionally, most courts to examine the issue have concluded foreclosure activity does not constitute "debt collection." *See Trinh v. Citibank*, NA, No. 5:12-cv-03902 EJD, 2012 WL 6574860, at *7 (N.D. Cal. Dec.17, 2012) (collecting cases). Wells Fargo's motion to dismiss this claim should be granted, with prejudice, as allowing further amendment would be futile.[5]

### 6. False Light Claim

In her Sixth Claim for Relief, False Light, Baldin alleges Wells Fargo recklessly disseminated misleading and inaccurate reports to various credit bureaus by portraying her "creditworthiness and financial condition in a false and highly offensive light." (Second Am. Compl. ¶¶ 78-79.) Wells Fargo seeks dismissal of this claim on the ground its reporting concerning Baldin's performance on the loan was accurate. Specifically, Wells Fargo contends Baldin's action in transferring the Cervantes Property triggered the due-on-sale clause and she cannot now allege the balance of loan on that property has been paid. Thus, Baldin is in default. Alternatively, Wells Fargo maintains Baldin's claim for false light must fail because she has not pleaded the required "publicity" element. *See Phillips v. Lincoln County Sch. Dist.*, 161 Or. App. 429, 434 (1999). According to Wells Fargo, the "limited distribution of protected information" to the CRAs does not satisfy the requirement for publicity. (Defs.' Reply Dismiss 14 (citing Restatement (Second) of Torts § 652D, comment a ("the matter must be regarded as substantially certain to become one of public knowledge")).)

---

[5]Although leave to amend a deficient complaint should be freely given when justice so requires, FED. R. CIV. P. 15(a), leave may be denied if amendment of the complaint would be futile. *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).

Under Oregon law, the elements of a false light invasion of privacy claim are:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor has knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

The tort of false light is akin to the tort of defamation in that it is based on statements about a person that lead others to believe something about that person that is false.

*Phillips*, 161 Or. App. at 434.

At oral argument Baldin's attorney stated he would withdraw Baldin's claim for false light at this time as it was his opinion her Eighth Claim For Relief, Defamation, was more appropriate under the circumstances here.  Accordingly, Wells Fargo's motion to dismiss Baldin's claim for false light should be granted, without prejudice.

### 7. Declaratory Relief

In her Ninth Claim for Relief, Declaratory Relief, 28 U.S.C. § 2201, Baldin alleges:

A real and actual controversy exists between Plaintiff and Defendants as to whether Plaintiff's transfer of the Cervantes and Multnomah Properties into the AJS8 Nevada Trust constitutes a protected transfer under the Garn-St. Germain Depository Institutions Act, 12 U.S.C. §1703J and whether, therefore, Defendants' acceleration of the mortgage loan on the Cervantes Property and Notice of Default was proper.

(Second Am. Compl. ¶ 86.)  Baldin asks the court to determine whether her transfers of these properties were exempt under Garn-St. Germain and to "permanently enjoin any foreclosure" by Wells Fargo.  (Second Am. Compl. ¶¶ 89-90.)

Wells Fargo evaluates this claim by Baldin as "nearly identical as her theory presented in her first claim for relief for breach of contract," and incorporates its arguments set forth in Section I.B.1. (above). (Defs.' Mem. Dismiss 18.)  Similarly, for the same reasons the court set forth in Section I.B.1. (above), Wells Fargo's motion to dismiss Baldin's claim for declaratory relief should be granted, without prejudice.

### 8. Unjust Enrichment

In her Eleventh Claim for Relief, Unjust Enrichment, Baldin alleges:  "Wells Fargo has received a benefit by inflating the loan balances as well as the monthly mortgage payments by approximately $1,350.00 for both the Multnomah and Cervantes Properties. Wells Fargo has further received a benefit by inflating the payoff amounts of both the Multnomah and Cervantes Loans." (Second Am. Compl. ¶ 92.)  Wells Fargo seeks dismissal of this claim on the ground Baldin failed to allege she conferred a benefit on Wells Fargo, as required by Oregon law.  Specifically, Wells Fargo points out Baldin cannot allege she made the increased payments because she complains here about Wells Fargo's decision to reject those payments.  Alternatively, Wells Fargo asserts the payments demanded of Baldin were appropriate under the terms of their agreements and, as such, cannot be the basis of a claim for unjust enrichment.  Baldin filed no response in opposition to Wells Fargo's request for judgment as a matter of law and it appears she abandoned this claim.

Briefly, to establish unjust enrichment under Oregon law, plaintiff must offer evidence:  (1) plaintiff conferred a benefit on defendant; (2) defendant was aware it had received a benefit; and (3) under the circumstances it would be unjust for defendant to retain the benefit without paying for it. *Volt Services Group, Div. of Volt Management Corp. v. Adecco Employment Services*, 178 Or. App. 121, 133 (2001).  Here, the court agrees there are no allegations Baldin actually paid the allegedly

28 – FINDINGS AND RECOMMENDATION

inflated amounts.  In fact, Baldin alleges Wells Fargo continues its attempts to compel her to pay

these amounts.  (Second Am. Compl. ¶ 93.)  On its face, Baldin's SAC fails to allege the necessary

elements to state a claim for unjust enrichment under Oregon law.  Accordingly, Wells Fargo's

motion to dismiss that claim should be granted, without prejudice.

II.    Baldin's Motion for Partial Summary Judgment

    A.    *Legal Standard*

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any

material fact and the movant is entitled to a judgment as a matter of law." FED R. CIV. P. 56(a).  The

party seeking summary judgment bears the initial burden of demonstrating no genuine dispute of

material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All material facts are

resolved in a light most favorable to the nonmoving party.  *Id.* at 331.  The court must accept all

evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc*.,

477 U.S. 242, 255 (1986).

    B.    *Analysis*

Baldin filed a Motion for Partial Summary Judgment "on the question of liability related to

her breach of contract claim against Defendant Wells Fargo." (Pl.'s Mot. Summ. J. 2.)  Specifically,

Baldin seeks a determination that Wells Fargo breached its implied duty of good faith and fair

dealing on the mortgage contract for the Cervantes Property by:  (1) declaring the mortgage to be in

default and exercising the "due-on-sale" provision of the deed of trust to accelerate the mortgage;

and (2) refusing to accept a duly tendered mortgage payment.  Regarding the second mortgage

contract for the Multnomah Property, Baldin contends Wells Fargo breached its duty of good faith

and fair dealing by:  (1) first accepting, then reversing her mortgage payment and crediting such

payment to an "unapplied funds account;" and (2) creating an escrow impound account for a tax

payment she previously made and then failing to request a refund from the Multnomah County

Assessor.

> Under Oregon law:
>
> [a]ll contracts include an implied covenant of good faith and fair dealing. The law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract when it is consistent with and in furtherance of the agreed-upon terms of the contract, or where it effectuates the parties' objectively reasonable expectations under the contract; however, the implied covenant of good faith and fair dealing does not vary the substantive terms of the contract or impose obligations inconsistent with the terms of the contract.

*Morrow v. Red Shield Ins. Co.* 212 Or. App. 653, 661-62 (2007) (internal citations omitted).

In *Morrow*, plaintiff took out a fire insurance policy which provided, in part, the insurer could

elect to not renew the policy by giving written notice to the insured at his mailing address shown in

the policy declarations at least 30 days before the expiration of the policy. *Id.* at 652-53. Plaintiff

presented evidence he provided the insurer with a change of address request when renewing the

policy, but the insurer failed to process that request and later sent notices for renewal of the policy

to plaintiff's old address, which were returned undeliverable. *Id.* at 656. Plaintiff never received

a notice of cancellation at the current address and the policy expired without being renewed. *Id.* The

insurer conceded the duty of good faith and fair dealing implied in the contract encompassed a duty

to process an address change request, assuming the request was properly made and did not contradict

the express terms of the policy. *Id.* at 662 ("the implied covenant of good faith and fair dealing does

not vary the substantive terms of the contract or impose obligations inconsistent with the terms of

the contract"). The Oregon appellate court agreed with the insurer's concession, observing: "it is

within the parties' reasonable expectations that, if the insured provides a change of address, the

30 – FINDINGS AND RECOMMENDATION

insurer will take action on that request . . . ." *Id.* at 662. The Oregon court ultimately recognized that because questions of fact remained concerning whether the insurer received the plaintiff's change of address request and whether the request was in the proper format, summary judgment should have been denied on plaintiff's breach of contract claim based upon the implied duty of good faith and fair dealing.

### 1.  Loan Acceleration - Cervantes Property

Baldin contends Wells Fargo breached the duty of good faith and fair dealing when it ignored the protections afforded by the Act and accelerated the loan pursuant to the due-on-sale clause. As set forth above, the court determined the transfer of the Cervantes Property to Lugano 4, which was then placed in the Nevada Trust, did not meet the requirements for the exception set forth in § 1701j-3(d)(8). Accordingly, Baldin's request for judgment on her claim for breach of the implied duty of good faith and fair dealing against Wells Fargo for accelerating the loan on the Cervantes Property should be denied.

### 2.  Refusal to Accept Payments - Cervantes Property

Similarly, Baldin's good faith and fair dealing claim grounded in Wells Fargo's refusal to accept "timely tendered payments" on the Cervantes loan first requires a determination that Wells Fargo wrongly accelerated that loan. If Wells Fargo properly exercised its option under the due-on-sale clause in that contract, the Bank was permitted to "return any payment or partial payment if the payment or partial payment is insufficient to bring the loan current . . . ." (Kiolbasa Decl. Ex. 2 at 4.) Accordingly, Baldin's request for judgment on her claim for breach of the implied duty of good faith and fair dealing against Wells Fargo for refusing to accept payments on the Cervantes Property should be denied.

3.  Unapplied Funds Account - Multnomah Property

Baldin next argues Wells Fargo breached paragraph 2 of the Multnomah Property deed of

trust by misapplying funds.  Specifically, paragraph 2 of that trust deed provides:

> **2. Application of Payments or Proceeds**. Except as otherwise described in this
> Section 2, all payments accepted and applied by Lender shall be applied in the
> following order of priority: (a) interest due under the Note; (b) principal due under
> the Note; (c) amounts due under Section 3 [Escrow Items]. Such payments shall be
> applied to each Periodic Payment in the order in which it became due. Any remaining
> amounts shall be applied first to late charges, second to any other amounts due under
> this Security Instrument, and then to reduce the principal balance of the Note.

(Kiolbasa Decl. Ex. 1 at 4.)  Baldin maintains Wells Fargo breached this provision of the contract

by failing to apply her payments on the Multnomah Property *to anything*.  (Pl.'s Mem. Summ. J. 10

(emphasis in original).)  According to Baldin, the loan has not been declared to be in default nor has

Wells Fargo taken any other action against the property.  Nevertheless, by letter dated March 14,

2012, Wells Fargo reversed its acceptance of her March 2012 mortgage payment and moved the

money to an "unapplied funds account."  This was done despite Wells Fargo's earlier acceptance,

including crediting that payment to the mortgage account, of the March 2012 payment.  Baldin

alleges Wells Fargo then treated the mortgage as if it had not been paid by assessing approximately

$1,350.00 per month in additional fees.  Further, Baldin believes her subsequent mortgage payment

was also placed in the unapplied funds account.

Wells Fargo defends by asserting it acted in accordance with the terms of the Multnomah

Property trust deed.  The Multnomah Property trust deed provides that if Baldin fails to pay her

property taxes when due, Wells Fargo may pay on her behalf and establish an escrow account.

(Kiolbasa Decl. Ex. 1 at 5.)  Baldin acknowledged this provision separately at loan closing in a

signed disclosure. (Matthew R. Overton Decl. Ex. 1, July 17, 2012.) Wells Fargo submitted two letters to Baldin providing her notice of the overdue tax bill, requesting proof of payment and informing her that failure to act would result in establishment of an escrow account to pay both past and future property taxes. (Overton Decl. at Exs. 3, 5.) Wells Fargo explains it acted to pay the taxes and create the escrow account only after providing Baldin the adequate notices and an opportunity to act.

Establishing the escrow account increased Baldin's monthly payment requirement (Overton Decl. Ex. 7.) Once the escrow account had been established and Baldin's monthly payment obligations increased, she was required by the contract to pay not only principal and interest, but also "escrow items" as defined by the trust deed, including property taxes. (Kiolbasa Decl. Ex. 1 at 4-5.) Because Baldin failed to tender monthly payments sufficient to make a complete payment, Wells Fargo was entitled to accept the funds, but was not required to apply them. Specifically, the trust deed provides: "Lender may accept any payment or partial payment insufficient to bring the loan current . . . but Lender is not obligated to apply such payments at the time such payments are accepted." (Kiolbasa Decl. Ex. 1 at 4.) Further, the deed of trust states: "Lender may hold such unapplied funds until Borrower makes payment to bring the loan current." (Kiolbasa Decl. Ex. 1 at 4.)

Although the allegations in her SAC are not precise as to the timing of the events in dispute, it appears Baldin alleges Wells Fargo paid the tax bill despite her notifying the Bank and providing proof the past due tax bill had been paid. (Second Am. Compl. ¶ 26.) Baldin, however, did not attach any documents to support her version of the timing, *i.e.,* she paid the tax bill, informed Wells

Fargo and it, nevertheless, paid the bill and established an escrow account. In contrast, Wells Fargo provided documentation of at least two notices to Baldin informing her of the overdue tax bill on the Multnomah Property and of the Bank's intent to pay the delinquent bill and establish an escrow account going forward absent timely proof of payment. (Overton Decl. Ex. 3, 5.) Accordingly, Baldin's request for judgment on her claim for breach of the implied duty of good faith and fair dealing against Wells Fargo for placing her Multnomah Property payments into and unapplied funds account should be denied.

### 4. Impound Account - Multnomah Property

Finally, Baldin seeks an entry of judgment on her claim that Wells Fargo breached the duty of good faith and fair dealing when it created an escrow impound account for a tax payment she previously made and then failed to request a refund from the Multnomah County Assessor. Baldin acknowledges "the language found in both deeds of trust does allow the bank to set up a tax impound account if property taxes are not paid and the bank's interest is impaired, [] Baldin paid these taxes immediately upon notice from the county assessor." (Pl.'s Mem. Summ. J. 13.) According to Baldin, Wells Fargo's interests were never impaired and she provided proof of payment to the Bank. Thus, Baldin contends Wells Fargo's "double payment of the property taxes" was, at a minimum, excusable neglect, but its subsequent refusal to request refund of the taxes and to disband the tax impound accounts are in bad faith are breach the covenant of good faith and fair dealing.

As set forth above, Baldin has not produced evidence to support her contention she paid the tax bill and notified Wells Fargo of that fact prior to Wells Fargo paying the balance on the delinquent amount and setting up the escrow account in accordance with the terms of the deeds of

trust. Moreover, Baldin has not come forward with any evidence to establish Wells Fargo, in fact, refused to request a refund of the double payment and that refusal was wrongful as a matter of law. Although Baldin may have her suspicions concerning Wells Fargo's motivations in this matter, the evidence submitted thus far on this issue tends to show Wells Fargo issued at least two notices to Baldin informing her of her responsibilities and the Bank's recourse under the contracts in the event Baldin did not meet her obligations. Accordingly, Baldin's request for judgment on her claim for breach of the implied duty of good faith and fair dealing against Wells Fargo for creating an escrow impound account for a tax payment she previously made and then failing to request a refund from the Multnomah County Assessor should be denied.

### Recommendation

Based upon the foregoing, Wells Fargo's Motion to Dismiss (doc. #24) should be GRANTED, in part, and DENIED, in part, as follows: Baldin's First (Breach of Contract), Second (UTPA), Third (FCRA), Sixth (False Light) and Ninth (Declaratory) Claims for Relief should be DISMISSED, without prejudice; Baldin's Fifth (FDCPA) Claim for Relief should be DISMISSED, with prejudice; Wells Fargo's motion should be DENIED in all other respects. Additionally, Baldin's Motion for Partial Summary Judgment (doc. #11) should be DENIED.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **February 27, 2013**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 12th day of February 2013

John V. Acosta
United States Magistrate Judge