IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AMY BALDIN, an individual and as sole manager of LUGANO PROPERTIES 4, LLC, a Nevada Limited Liability Company, | 3:12-cv-648-AC |
| | FINDINGS AND RECOMMENDATION |
| Plaintiff, | |
| v. | |
| WELLS FARGO BANK, N.A., a National Bank registered to do business in Oregon; and WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A., | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Pending Motions*

Amy Baldin ("Baldin") filed a Second Amended Complaint ("SAC"), in her individual

capacity and as the sole manager of Lugano Properties 4, LLC, against Wells Fargo Bank, N.A. and

Wells Fargo Home Mortgage (collectively "Wells Fargo") alleging claims under state and federal

1 – FINDINGS AND RECOMMENDATION

law arising from the breach of certain mortgage loan contracts for investment properties. Specifically, Baldin alleged state common law claims for breach of contract, intentional infliction of severe emotional distress ("IIED"), false light, defamation and unjust enrichment. Additionally, she alleged statutory claims, under both state and federal law, for violations of the Oregon Uniform Trade Practices Act, OR. REV. STAT. §§ 646.605-646.656, the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p. Baldin sought monetary, injunctive, and declaratory relief, including a request pursuant to 28 U.S.C. § 2201 that this court determine whether her transfer of certain property was an "exempt transfer under the Garn-St. Germain Depository Institutions Act." (Second Am. Compl. ¶ 89.) Subsequently, the court dismissed, without prejudice, Baldin's First (Breach of Contract), Second (UTPA), Third (FCRA), Sixth (False Light), Ninth (Declaratory) and Eleventh (Unjust Enrichment) Claims for Relief. Additionally, the court dismissed, with prejudice, Baldin's Fifth (FDCPA) Claim for Relief.

Baldin filed a Motion for Leave to Amend Her Complaint Following Motion to Dismiss Pursuant to FED. R. CIV. P. 15. By her proposed Third Amended Complaint ("TAC"), Baldin seeks to: (1) include "additional facts and supporting documents" in support of her two remaining claims for defamation and IIED; (2) re-plead her previously dismissed claim under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, to "address the concerns raised" by the court, and (3) add two new causes of action that arose after Baldin filed her SAC in this case – a claim for negligence under Oregon law and a federal statutory claim pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 - 2617. (Pl.'s Mem. Am. Compl. 2-4.) Wells Fargo opposes Baldin's request to amend because, among other things, her proposed revisions "suffer from substantive defects that make them subject to an immediate motion to dismiss or motion for

2 – FINDINGS AND RECOMMENDATION

summary judgment[.]" (Defs.' Opp. 2.) For the reasons set forth below, Baldin's Motion for Leave to Amend should be granted, in part, and denied, in part.

*Legal Standard*

Under FED. R. CIV. P. 15(a)(1), a party may amend its pleading once as a matter of course before being served with a responsive pleading or within 21 days after serving the pleading, if a responsive pleading is not allowed. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). When deciding whether to grant leave to amend, the courts consider four factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. *Texaco, Inc. v. Ponsoldt,* 939 F.2d 794, 798 (9th Cir. 1991). Rule 15 requires "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The court recognizes that a liberal standard is applied to motions for leave to amend. *AmerisourceBergen Co. v. Dialyses West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

*Discussion*

Before turning to the question of whether Baldin's proposed amendments are futile, the court will consider whether her request should be denied for reasons of undue delay, bad faith, or prejudice.

A.    *Undue Delay*

A party's undue delay and failure to explain the reason for the delay weigh against leave to amend under Rule 15. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir.1996); *Texaco, Inc.*, 939 F.2d 799. Nevertheless, delay alone, no matter how lengthy, cannot justify denial of a motion to amend. *See, e.g., Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) (Ninth Circuit will reverse

3 – FINDINGS AND RECOMMENDATION

a denial of a motion for leave to amend in the absence of a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment.)

Wells Fargo challenges as excessive Baldin's four-month delay between the court's dismissal of certain claims and filing the present motion. Additionally, Wells Fargo contends Baldin has been aware of the new allegations and claims for some time, including before her two prior amendments to the Complaint. (Defs.' Opp. 2-3.) Baldin offers no explanation for her decision to wait four months to file the present motion. In addition, with the exception of Baldin's new claim for negligence, it is unclear why the additional allegations were not included in one of her two prior amendments. *See Griggs v. Pace Am Group, Inc.*, 170 F.3d 877, 879 (9th Cir. 1999) (A court's discretion to refuse leave to amend is particularly broad when leave to amend previously has been granted.) In the absence of any explanation from Baldin, a four-month delay in seeking leave to file a TAC constitutes undue delay and militates against granting Baldin leave to amend for a third time. *See Lockheed Martin Corp. V. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Although delay is not a dispositive factor in the amendment analysis, it is relevant . . . especially when no reason is given for the delay.").

### B.    Bad Faith

Next, Wells Fargo contends Baldin's request to amend her Complaint should be denied for the reason of bad faith. Wells Fargo explains it has incurred "significant expense in defending against Baldin's claims . . . ." (Defs.' Opp. 3.) According to Wells Fargo, Baldin's conduct in continuing to bring claims before the court that are not viable as a matter of law is evidence she is "simply seeking to extend the litigation . . . in an attempt to force Wells Fargo to settle her specious claims or gain other perceived advantages by prolonging litigation." (Defs.' Opp. 3.)

While there is no direct evidence of bad faith, the court notes that in her motion for leave to amend Baldin provided scant facts or legal theories to support her proposed amendments. Moreover, other than a general citation to the legal standard, Baldin did not address any of the factors a court considers in assessing the propriety of a motion for leave to amend nor did she file a Reply. Furthermore, any reasonable diligence on the part of Baldin would have led to the discovery that several of her proposed amendments lack merit. While the court declines to make a specific finding of bad faith in these circumstances, this factor is weighted as neutral, *i.e.*, weighing neither in favor of or against granting leave to amend.

C.    *Prejudice*

Wells Fargo explains the parties have exchanged document discovery relating to Baldin's surviving claims for defamation and intentional infliction of emotional distress. If the court grants Baldin's Motion to Amend it will require another round of Rule 12 motions and additional discovery. According to Wells Fargo, if Baldin is granted leave to bring her new claims, the parties may need to serve new requests for written discovery in order to further investigate and analyze Baldin's new claims relating to substantially different facts. (Defs.' Opp. 11.) Wells Fargo maintains if the court grants leave to amend, both prejudice to Wells Fargo and delay to the litigation will result.

The court agrees Wells Fargo may suffer some degree of prejudice if Baldin is allowed to file a TAC. Her additional claims advance new legal theories and require proof of different facts. Although discovery is still open, there will be litigation costs associated with this additional discovery and preparation. In addition, Wells Fargo already filed a motion to dismiss the operative pleading and, upon amendment, another motion may be required. While the court is aware the

additional expense may be a legally cognizable form of prejudice, these costs are not extraordinary,

however, and the prejudice Wells Fargo may suffer if further amendment is allowed is minimal.

Wells Fargo argues no other prejudice as a result of amendment. *See Jackson v. Bank of Hawaii*,

902 F.2d 1385, 1387 (9th Cir. 1990) (court finds prejudice based upon the nullification of prior

discovery, the burden of necessary future discovery, and the relitigation of a suit brought by its

insurer regarding the liability of the two parties on appellants' claims). Accordingly, this factor

weighs in favor of granting Baldin leave to amend her Complaint. *See id.* (prejudice to the opposing

party is the most important factor).

       D.    *Futility*

In the Ninth Circuit futility of an amendment alone will justify the denial of a motion for

leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see also, Lopez v. Smith*, 203

F.3d 1122, 1129-30 (9th Cir. 2000) (*en banc*) (confirming district court's authority to dismiss

without leave to amend where amendment would be futile). A proposed amendment is futile only

if no set of facts can be proved under the amendment which would constitute a valid claim or

defense. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

       1.    Venue

In her proposed TAC, Baldin seeks to add causes of action related to loans secured by

properties located in California, Florida, and Nevada. (Pl.'s Mot. Amend Ex. 2 ¶¶ 10-14.) Wells

Fargo challenges these amendments on the ground "Oregon's courts are not the proper venue for

considering any claims arising from these loans, making them subject to dismissal under Fed. R. Civ.

P. 12(b)(3)." (Defs.' Opp. 4.) According to Wells Fargo, "Baldin has made no attempt to make any

showing that the 'events and omissions' giving rise to her claim occurred in Oregon . . . ." (Defs.'
Opp. 5.)

Venue is "the geographic specification of the proper court or courts for the litigation of a civil
action." 28 U.S.C. § 1390. Venue is proper in any district where any defendant resides. 28 U.S.C.
§ 1391(b)(1). Additionally, in diversity suits, venue is proper in "a judicial district in which a
substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of
property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Lastly, "if there is no
district in which an action may otherwise be brought" the venue is proper in "any judicial district in
which any defendant is subject to the court's personal jurisdiction with respect to [the] action." 28
U.S.C. § 1391(b)(3).

The relevant inquiry under Rule 12(b)(3) is whether venue is proper in the particular district
in which plaintiff filed the claim. For purposes of § 1391, a corporation resides "in any judicial
district in which it is subject to personal jurisdiction at the time the action is commenced." 28
U.S.C. § 1391(c). Wells Fargo does not dispute personal jurisdiction in the District of Oregon,
making venue proper under § 1391(b) and (c). Accordingly, for venue purposes, Wells Fargo is
considered to reside in the District of Oregon and, consequently, under 28 U.S.C. § 1391, venue is

7 – FINDINGS AND RECOMMENDATION

proper.[1] Wells Fargo's request to deny as futile Baldin's proposed amendments to include three out-of-state properties should be denied.[2]

        2.     RESPA Claim

In her proposed Fourth Claim for Relief, Baldin alleges a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617. Specifically, Baldin contends she "submitted numerous Qualified Written Requests to her loan servicer, Wells Fargo, regarding the use of escrow accounts and fees charged on the Cervantes, Multnomah, Corte Madera, Orchard Mist and Miami Properties." (Pl.'s Mot. Amend Ex. 2 ¶ 124.) According to Baldin, "[p]ursuant to 12 U.S.C. §2605[e], Wells Fargo had a duty to respond to these Qualified Written Requests within 20 days and resolve [her] questions within 60 days, but the bank failed to do so." (Pl.'s Mot. Amend Ex. 2 ¶ 125.)

---

[1] The fact the properties at issue are located outside of Oregon does not alter this conclusion. *See Siskiyou Properties, LLC*, No. 99-cv-1062-KI, 1999 WL 1038729, at *1-2 (D. Or. Nov. 15, 1999) (court has subject matter jurisdiction over real property located outside its boundaries) (citing *Small v. Carey*, 269 Or. 35, 37-39 (1974) (drawing a distinction between the jurisdiction of Oregon courts to pass judgment on the title to land in another state and jurisdiction over a transitory action or suit in personam aimed at a transaction between the parties that involves real property outside the state).

[2] The court notes Wells Fargo suggests "the notes or trust deeds which form the parties' contracts for those loans . . . quite likely contain forum selection clauses that are generally enforced by the courts." (Defs.' Opp. 5 n.2 (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).) Wells Fargo did not provide the court with copies of the notes or trust deeds. *See Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (on a motion to dismiss for improper venue, "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings."). There is no evidence before the court regarding a forum selection clause in the relevant documents and, as such, this would not be a proper basis to deny Baldin's proposed amendments as futile.

RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans. 12 U.S.C. § 2605(e)(1)(A), (e)(2). If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a "pattern or practice of noncompliance," statutory damages of up to $1,000. *Id.* § 2605(f). Here, Wells Fargo argues, among other things, RESPA applies only to "federally related mortgage loans," which are described in part as "a first or subordinate lien on residential real property[.]" 12 U.S.C. § 2602(1)(A). RESPA's statutory provisions expressly state RESPA does not "apply to credit transactions involving extensions of credit . . . primarily for business, commercial, or agricultural purposes[.]" 12 U.S.C. § 2606(a). In interpreting this provision, courts have found RESPA does not apply to loans for non-owner occupied rental properties. *See, e.g., Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 417 (9th Cir. 2011) (mortgages on non-owner-occupied rental properties are defined as business-purpose loans and, thus, RESPA does not apply); *Ford v. Central Loan Admin.*, No. 11-0017-WS-C, 2011 WL 4702912, at *4 & n. 8 (S.D. Ala. Oct. 5, 2011) ("Numerous courts have held that RESPA has no application to credit transactions for investment or rental properties."); *Washington Mut. Bank v. Freitag*, 242 Or. App. 538, 544 (2011) (accord *Johnson*).

Baldin is a resident of Nevada and she does not allege she ever resided in the Oregon "multifamily residential properties, " which are investment properties and the subjects of the loans at issue in this case. (Pl.'s Mot. Amend Ex. 2 ¶¶ 1, 2, 3, 5, 7.) As the Ninth Circuit has held, loans obtained to finance non-owner occupied rental properties are loans for a "business purpose," excluding them from the scope of RESPA. *Johnson*, 635 F.3d at 417-18. Baldin's Fourth Claim for Relief pursuant to RESPA would be immediately subject to dismissal if challenged under Rule

9 – FINDINGS AND RECOMMENDATION

12(b)(6) and, thus, her request to amend her Second Amended Complaint to add that Claim is denied as futile.

### 3.    Defamation and IIED

Wells Fargo opposes Baldin's request to amend the defamation and IIED claims in her SAC simply to add "[a]dditional facts and supporting documents to support the claims . . . ." (Pl.'s Mem. Amend 2-3)  Wells Fargo concedes these claims are not futile but objects to the amendments as unnecessary.  Specifically, Wells Fargo contends Baldin will have the opportunity to develop these claims throughout the normal course of these proceedings, *i.e.*, discovery, summary judgment and trial.  (Def.'s Opp. 6-8.)

The court grants Baldin leave to amend her SAC to include the proposed additional facts and documentation.  While there has been undue delay on Baldin's part in requesting leave to amend, Wells Fargo will not incur prejudice sufficient to warrant denial of the proposed amendment.  Wells Fargo concedes Baldin's claims for defamation and IIED are not futile, and the proposed amendments include only additional allegations in support of existing claims, as opposed to entirely new claims.  No trial date has been set and the time for filing dispositive motions is still open.  On balance, the factors weigh in favor of granting this limited amendment.

### 4.    FCRA Claim

In her proposed Second Claim for Relief, Baldin alleges a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.  Specifically, Baldin contends Wells Fargo "knowingly reported and continue to report inaccurate and misleading information to the credit reporting agencies regarding the mortgage loans" and "have refused Plaintiff's request to correct and provide accurate information to the credit reporting agencies."  (Pl.'s Mot. Amend Ex. 2 ¶¶ 112,

114.) According to Baldin, this "cause of action has been completely revamped in the TAC along with supporting documentation" to address the reasons this claim was dismissed originally. (Pl.'s Mem. Amend 3.) Wells Fargo opposes this amendment on the ground it is futile because "Baldin cannot attempt to enforce such a claim under the plain language of the FCRA." (Defs.' Opp. 6.) According to Wells Fargo, Baldin's own evidence shows Wells Fargo has complied with the requirements of FCRA and the fact Wells Fargo reported "negative information following [Baldin's] notice of dispute" is not *per se* actionable. (Defs.' Opp. 6-7.)

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . ." 15 U.S.C. § 1681(b). A consumer reporting agency ("CRA") is one that "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).

To ensure  credit reports are accurate, the FCRA imposes some duties on the sources providing credit information to CRAs, called "furnishers" in the statute. Section 1681s–2 sets forth responsibilities of furnishers of information to consumer reporting agencies delineating two categories of responsibilities. Subsection (a) details the duty to provide accurate information, including the "[d]uty to provide notice of dispute." 15 U.S.C. § 1681s-2(a)(3). If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer. 15 U.S.C. § 1681s-2(a)

11 – FINDINGS AND RECOMMENDATION

(3).  The provisions of § 1681s-2(a) may be enforced only by federal agencies and certain state officials, not private persons.  *Nelson v. Chase Manhattan Mort. Corp.* 282 F.3d 1057, 1059 (9th Cir. 2002).

Section 1681s-2(b) imposes a second category of duties on furnishers of information.  These obligations are triggered upon notice of dispute – that is, when a person or entity who furnished information to a CRA receives notice from the CRA the consumer disputes the information.  Subsection 1681s-2(b)(1) provides, after receiving a notice of dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) . . .;
>
> (C) report the results of the investigation to the [CRA];
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information . . .; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . . (i) modify . . . (ii) delete [or] (iii) permanently block the reporting of that item of information [to the CRAs].

15 U.S.C. § 1681s-2(b) (1).  These duties arise, however, only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b).  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).

Subsection 1681s-2(b)(1) can be enforced by a private plaintiff who establishes:  (1) the furnisher of information received notice of the dispute from a credit reporting agency; (2) it failed to perform a reasonable investigation upon receiving such notice; (3) the failure to investigate was

12 – FINDINGS AND RECOMMENDATION

willful or negligent; and (4) plaintiff was harmed. *Saucedo v. Bank of Am.*, N.A., No. 3:11-cv-00813-MO, 2011 WL 6014008, at *3 (D. Or. Dec. 1, 2011). Moreover, a plaintiff who identifies the credit reporting at issue, alleges it was false, includes allegations as to why it was false, alleges she tried to explain why it was false but her attempts were ignored, and alleges she was harmed in a particular way, satisfies the pleading requirements for such a claim. *Id.* at 4. It would be difficult for such a plaintiff to explain at the pleading stage "precisely how defendants' follow-up investigation was negligent or willfully inadequate." *Id.* (denying defendants' motion to dismiss on credit reporting claims under 15 U.S.C. § 1681 s-2(b)).

As stated above, Baldin alleges in her TAC she challenged "inaccurate credit entries and requested . . . the [CRAs] to conduct a proper investigation" (Pl.'s Mot. Amend Ex. 2 ¶ 93.) Baldin further alleges Wells Fargo "received notice of [her] dispute and has reiterated that Plaintiff has been delinquent in her payments . . . ." (Pl.'s Mot. Amend Ex. 2 ¶ 94.) Baldin further charges Wells Fargo "knowingly reported and continue[s] to report inaccurate and misleading information to the credit reporting agencies regarding the mortgage loans" and "have refused Plaintiff's request to correct and provide accurate information to the credit reporting agencies." (Pl.'s Mot. Amend Ex. 2 ¶¶ 112, 114.)

Significantly, Baldin does not allege Wells Fargo failed to conduct an investigation with respect to the disputed information, failed to review all relevant information provided by the CRA, failed to report the results of the investigation to the consumer reporting agency, or found the information was incomplete or inaccurate or could not be verified. Rather, Baldin challenges Wells Fargo's refusal/failure to correct allegedly inaccurate info and, instead knowingly continue to report false and misleading information. By her own allegations, Baldin demonstrates Wells Fargo

addressed the dispute.  Baldin does not seek a "reinvestigation" but, rather, she challenges the manner in which Wells Fargo processed and applied her loan payments.

Section 1681s-2(b) provides a private right of action against furnishers for failure to comply with its requirements.  It does not, however, create liability for furnishers simply because the consumer continues to disagree with the conclusion reached by a furnisher following compliance with § 1681s-2(b).  The provisions of FCRA do not require Wells Fargo to ignore its policies and procedures related to the processing and application of loan payments by modifying or deleting information provided to the CRAs simply because the consumer disagrees.  Subparagraph (E) of § 1681s-2(b)(1) requires Wells Fargo to modify, block or delete any inaccurate "information." Nothing in § 1681s–2(b), however, requires Wells Fargo to correct information simply because the consumer believes it is erroneous.  It is important to note Baldin's dispute over the validity of her underlying debts is not equivalent to a factual inaccuracy that must be must modified, deleted, or blocked in accordance with subsection (E).  Indeed, these are the questions at issue in this litigation and vigorously contested by Wells Fargo.

Thus far, Wells Fargo has satisfied its obligations under FCRA, including its duty to provide notice to the CRAs that the consumer disputes the reported information.  Baldin's Second Claim for Relief pursuant to FCRA would be immediately subject to dismissal if challenged under Rule 12(b)(6) and, thus, her request to amend her SAC to add that Claim is futile.

5.    Negligence Claim

In her proposed Fifth Claim for Relief, Baldin alleges a state law claim for negligence contending Wells Fargo breached of its duty of care by: (1) improperly paying property taxes for the Multnomah and Cervantes Properties after receiving notice Baldin had paid these taxes on two

separate occasions; and (2) reporting inaccurate information to the credit reporting agencies after dispute and notice as required by the FCRA.  (Pl.'s Mot. Amend Ex. 2 ¶ 131.)  Wells Fargo opposes this amendment on the ground it is futile.  Specifically, Wells Fargo contends the relationship between a lender (or loan servicer) and a borrower is merely contractual and, as such, there is no attendant duty of care. (Defs.' Opp. 9-10.)  Wells Fargo relies on a recent decision of this court finding the relationship between a lender and a holder of a trust deed and a grantor is strictly one of contract. *Nelson v. American Home Mortgage Servicing, Inc.*, No. 3:13-cv-0306-BR, 2013 WL 3834656, * at 5-6 (D. Or. July 24, 2013) ("It is an arm's-length transaction and not the 'kind of relationship [that] carries with it a standard of care that exists independent of the contract and without reference to the specific terms of the contract.'" (quoting *Georgetown Realty, Inc. v. The Home Ins. Co.*, 313 Or. 97, 110-11 (1992)).

In Oregon, a negligence claim turns on a two-step analysis.  *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 17 (1987).  First, the court considers whether there is evidence of a special relationship between plaintiff and defendant due to "a status, a relationship, or a particular standard of conduct that creates, defines or limits the defendant's duty." *Buchler v. State By & Through Or. Corr. Div.*, 316 Or. 499, 504 (1993) *(en banc)* (quoting *Fazzolari*, 303 Or. at 17).  Such a special relationship defining defendant's standard of care can also be found in "a statute or an ordinance." *Little v. Wimmer*, 303 Or. 580, 584 (1987) *(en banc)*.  If a special relationship exists, the court analyzes defendant's duty under that standard.  If there is no special relationship, the court proceeds to the second step, analyzing whether defendant's conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Buchler*, 316 Or. at 504, 509 (quoting *Fazzolari*, 303 Or. at 17).

15 – FINDINGS AND RECOMMENDATION

Relevant to Baldin's claim for negligence in this case, is the Oregon Supreme Court's decision in *Abraham v. T. Henry Const., Inc.*, 350 Or. 29 (2011). In *Abraham*, the Court reiterated that *Fazzolari* remains the touchstone for determining the existence of negligence liability, even in the presence of a contract between the parties. *Id. at 37* ("Thus, *Fazzolari* lays out a framework to address whether a common law negligence claim is legally cognizable even when there is a contractual relationship between the parties."). To determine whether a negligence claim is viable in the presence of a contractual relationship between the parties, the court must:

> [F]irst consider whether plaintiffs alleged that defendants unreasonably created a foreseeable risk of harm to a protected interest, resulting in injury to plaintiffs. If so, [the court] must determine whether the contract between the parties altered or eliminated defendants' common law duty to avoid harming plaintiffs. If it did not, then the contract does not bar plaintiffs from bringing a negligence action against defendants.

350 Or. at 37. The Oregon Supreme Court also stated, in certain circumstances, common law principles could impose a heightened standard of care absent a special relationship or statutory standards and regulations. *Id.* at 40. *Abraham* is a construction defect case, however, and it is readily distinguishable from the instant case. There, the Oregon Supreme Court held if a defendant's negligence caused physical damage to real property, plaintiff could apply common law principles of negligence to establish liability in addition to the damages caused by breach of contract. *Id.* Importantly though, the Court distinguished physical damages from economic losses: "[T]his court's case law is clear that *economic losses*, such as the ones suffered by the plaintiff in *Georgetown*, are recoverable in negligence only if the defendant is subject to a heightened standard of care, such as one arising out of a special relationship." *Id.* (emphasis in original) (citing *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or. 149, 160-61 (1992)). Thus, plaintiffs may go forward

16 – FINDINGS AND RECOMMENDATION

with negligence claims if there is viable evidence of reasonably foreseeable physical damage to real property. *Id.*

Here, Baldin does not claim tort liability for physical damages but, rather, seeks recovery for only economic losses caused by Wells Fargo's conduct with respect to the mortgage contract(s). Thus, under Oregon law, the only duty in this case is created by the contract(s) between the parties. Absent a special relationship or some other heightened duty of care – beyond the common-law duty to exercise reasonable care – Baldin has only a contract action. To recover under a negligence theory for economic losses caused by a breach of contract, Baldin is required to plead a special relationship or heightened duty of care, and she does neither. *See, e.g., Onita Pac. Corp.*, 315 Or. at 159 (A negligence claim for the recovery of economic losses caused by another must be predicated on "some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm."). Accordingly, Baldin's claim for negligence would be subject to dismissal under Rule 12(b)(6) and, as such, the amendment is futile.

*Recommendation*

For the reasons set forth above, Baldin's Motion For Leave to Amend (doc. #106) should be GRANTED, in part, and DENIED, in part, as follows: Baldin should be permitted to file her Third Amended Complaint and include the allegations in paragraphs 10-14 related to the three additional properties located outside of Oregon, and allegations in support of her claims for defamation and intentional infliction of emotional distress.

17 – FINDINGS AND RECOMMENDATION

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due **December 4, 2013**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this /day of November 2013

John V. Acosta
United States Magistrate Judge

18 – FINDINGS AND RECOMMENDATION