IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

AMY BALDIN, an individual and as sole
manager of LUGANO PROPERTIES 4,
LLC, a Nevada Limited Liability Company,

Civ. No. 3:12-648-AC

FINDINGS AND
RECOMMENDATION

Plaintiff,

v.

WELLS FARGO BANK, N.A., a National
Bank registered to do business in Oregon;
and WELLS FARGO HOME MORTGAGE,
a division of WELS FARGO BANK, N.A.,

Defendants.

ACOSTA, Magistrate Judge:

*Introduction*

Defendants Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage (collectively "Wells Fargo") move for an award of attorney fees and costs following the court's judgment granting Wells Fargo's motion for summary judgment. Wells Fargo requests fees in the amount of $129,429.86 and costs of $2,599.55. Plaintiff Amy Baldin ("Baldin") opposes Wells Fargo's request. The court recommends Wells Fargo be awarded attorney fees in the amount of $45,504.20 and costs in the amount of $2,599.55.

*Background*[1]

This case arises from three loans made between 2006 and 2007 by Wells Fargo to Baldin and her former husband, Jeffery Schoeffner ("Schoeffner"). The first loan was secured by a deed of trust on the property located at 2410 NE Multnomah Street, Portland, Oregon ("Multnomah Property"). The second loan was secured by a deed of trust on the property located at 1500 Bay Road, Miami Beach, Florida ("Miami Property"). The third loan was secured by a deed of trust on the property located at 288-294 Cervantes Circle, Lake Oswego, Oregon ("Cervantes Property").

In January 2010, Baldin and Schoeffner transferred the Multnomah and Cervantes Properties into separate LLCs, which combined with other LLCs that housed other investment properties to form a Nevada Series LLC. Baldin and Schoeffner later divorced, and Baldin assumed responsibility of making all mortgage and tax payments for the property the couple had jointly acquired. In late 2010, Baldin failed to timely pay the property tax payments for the

---

[1]Unless otherwise indicated by a separate citation, the background facts are taken from the court's Findings and Recommendation issued on July 22, 2015 (ECF No. 199.), and adopted by Judge Mosman on September 16, 2015 (ECF No. 203.). The Findings and Recommendation addressed Wells Fargo's summary judgment motion.

FINDINGS AND RECOMMENDATION        2                                    {TJK}

Multnomah, Cervantes, and Miami Properties.  Wells Fargo then sent a series of letters to Baldin and Schoeffner requesting they provide proof the property tax payments had been made for the properties.   The letters further cautioned that if proof of payment was not provided, Wells Fargo would establish escrow accounts to pay the part due and future property tax payments.   Wells Fargo did not receive proof of payment on any of the three properties.

After a second round of letters advising Baldin and Schoeffner to pay their property taxes proved fruitless, Wells Fargo sent letters to Baldin and Schoeffner advising that escrow accounts had been established for the three properties and that property tax payments had been advanced on their behalf.  Thereafter, Wells Fargo sent escrow account disclosure statements to Baldin and Schoeffer advising them that their monthly payments on the three properties would be increasing due to the establishment of escrow accounts on the loans.

At least with respect to the Multnomah and Cervantes Properties, Baldin admits she was delinquent in paying 2010-11 property taxes.  Upon receipt of the delinquent notice, however, she maintains she immediately made payment of the amounts due and proceeded to inform Wells Fargo of her tax payment.  Wells Fargo disputes this, arguing Baldin did not provide proof until mid-October 2011.

Baldin charges that Wells Fargo proceeded to pay the taxes and establish the escrow account despite her paying the property taxes on the Multnomah and Cervantes Properties and immediately notifying Wells Fargo thereof.  Thus, despite being advised by Wells Fargo the new escrow accounts would cause her monthly payments to increase, Baldin continued to make payments reflecting only the principal and interest sums.  She did so on all three properties.

At around this same time, Wells Fargo learned the Cervantes Property had been transferred to LUGANO PROPERTIES 4, LLC, in violation of the parties' loan agreement. As a result, Wells Fargo declared the loan in default and exercised the due-on-sale clause in the Trust Deed. Baldin was unable to pay the balance due on the Cervantes Property following the loan acceleration, and, consequently, Wells Fargo reported the Cervantes Property as thirty days past due in March 2012. Meanwhile, Wells Fargo did not receive payments on the Miami or Multnomah Properties after February 2012 and April 2012, respectively.

Baldin stated that Wells Fargo immediately reported to the Credit Reporting Agencies ("CRAs") that her payments were delinquent, thereby damaging her credit score. Baldin initiated this lawsuit by filing a complaint in Multnomah County Circuit Court on March 7, 2012. The initial Complaint did not include any allegations of negative credit reporting but, instead, asserted claims for breach of the mortgage loan contract for both the Multnomah and Cervantes Properties, wrongful foreclosure, quiet title, violation of the Uniform Deceptive Trade Practices Act, and intentional infliction of emotional distress. (Compl. (ECF No. 1.).)

Baldin's claim for breach of the mortgage loan contract alleged Wells Fargo's refusal to accept mortgage payments on the Multnomah and Cervantes Properties, as well as initiation of foreclosure proceedings on the Cervantes Property, breached the Deeds of Trust. (Compl. ¶¶ 24-29 (ECF No. 1.).) Baldin's second claim for wrongful foreclosure asserted that Wells Fargo attempted to conduct an illegal foreclosure and sale of the Cervantes Property. (Compl. ¶¶ 31-34 (ECF No. 1.).) Baldin's third claim for quiet title argued Baldin is the sole owner of the Cervantes Property, Wells Fargo had no right to title or interest in the Cervantes Property, and asked the court to declare the parties' respective rights. (Compl. ¶¶ 35-38 (ECF No. 1.).) Her

FINDINGS AND RECOMMENDATION        4                    {TJK}

fourth claim of relief for violating the Uniform Deceptive Trade Practices Act argued Wells Fargo's initiation of foreclosure proceedings against the Cervantes Property, as well as later inaccurate reporting to CRAs, among other actions, was an unconscionable business practice and thus violated the Uniform Deceptive Trade Practices Act. (Compl. ¶¶ 39-44 (ECF No. 1.).) Finally, Baldin's fifth claim for intentional infliction of emotional distress argued Wells Fargo's illegal sale of the Cervantes Property was an intentional action knowingly engaged in by Wells Fargo to inflict severe emotional distress on her. (Compl. ¶¶ 45-46 (ECF No. 1.).)

Wells Fargo then removed the proceedings to this court pursuant to 28 U.S.C. §§ 1331, 1332, and 1367. (Notice of Removal, at 1-7 (ECF No. 1.).) Following removal, and before Wells Fargo responded to Baldin's Complaint, Baldin filed her First Amended Complaint ("FAC"). (Am. Compl. (ECF No. 4.).) Baldin's FAC retained all prior claims but added causes of action for false light, declaratory relief, unjust enrichment, violation of the Fair Credit Reporting Act, and violation of the Fair Debt Collection Practices Act. (Am. Compl. (ECF No. 4.).)

Baldin's claim for false light alleged Wells Fargo provided misleading and inaccurate reports to CRAs. (Am. Compl. ¶¶ 56-58 (ECF No. 4.).) Baldin's claim for declaratory relief asked the court to determine whether Baldin's property transfer violated the Garn-St. Germain Depository Institutions Act and for an order enjoining Wells Fargo from foreclosing if the court found it did so. (Am. Compl. ¶¶ 59-64 (ECF No. 4.).) Her unjust enrichment claim argued Wells Fargo had been unjustly enriched by inflating the loan balances and monthly mortgage payments. (Am. Compl. ¶¶ 65-58 (ECF No. 4.).) Baldin's claim for violation of the Fair Credit Reporting Act argued Wells Fargo reported inaccurate and misleading information to CRAs and

thereby damaged her credit.  (Am. Compl. ¶¶ 43-46 (ECF No. 4.).)  And finally, Baldin's claim

for violation of the Fair Debt Collection Practices Act argued Wells Fargo improperly

communicated with Baldin after Wells Fargo became aware she had retained counsel.  (Am.

Compl. ¶¶ 52-55 (ECF No. 4.).)

Sixteen days after filing her FAC, Baldin moved for partial summary judgment on her

breach of contract claim.  (Baldin Mot. Summ. J. (ECF No. 11.).)  In response, Wells Fargo filed

a motion to dismiss for failure to state a claim.  (Mot. to Dismiss (ECF 24.).)  Wells Fargo's

motion sought dismissal of all of Baldin's claims, arguing that Baldin, not Wells Fargo, breached

the contract.  (Mot. to Dismiss., at 2 (ECF 24.).)

While both motions were under advisement, Baldin filed a motion for leave to amend her

FAC to add claims for common law embezzlement and defamation.  (ECF No. 65.)  This court

granted Baldin's motion to amend with respect to the defamation claim and denied without

prejudice the motion with respect to the embezzlement claim.  (ECF No. 77.)  Baldin filed her

Second Amended Complaint ("SAC") on October 17, 2012, which retained all prior claims and

added the defamation claim, arguing Wells Fargo's inaccurate and negative reporting to CRAs

damaged her reputation.  (Sec. Am. Comp. ¶¶ 80-84 (ECF 81.).)

On July 23, 2012, Baldin sought and obtained a temporary restraining order and

preliminary injunction from "Wells Fargo's harmful and inaccurate reporting."  (Baldin Decl. ¶

10 (ECF No. 34.).)  Wells Fargo twice violated the injunction.  (ECF No. 98; ECF No. 130.)

After the second violation, Judge Mosman entered an order sanctioning Wells Fargo for its

continued violation.  (ECF No. 130.)

On March 3, 2013, the court denied Baldin's summary judgment claim and granted Wells Fargo's motion to dismiss with respect to every claim besides Baldin's claims for intentional infliction of emotional distress and defamation. (ECF No. 102.)

In July 2013, Baldin again sought leave to file a Third Amended Complaint ("TAC"), which stated claims for defamation, intentional infliction of emotional distress, violation of the Fair Credit Reporting Act, violation of the Real Estate Settlement Procedures Act ("RESPA"), and common law negligence. (ECF No. 106.) The court granted Baldin's motion to amend in part and denied it in part. (ECF No. 138.) While the court rejected Baldin's attempt to bring claims under RESPA, negligence, and the Fair Credit Reporting Act, the court allowed Baldin to amend and add allegations in support of her claims for defamation and intentional infliction of emotional distress. (ECF No. 133.)

Consequently, on December 12, 2013, Baldin filed her TAC. (Third Am. Comp. (ECF No. 140.).) The TAC contained only two claims: intentional infliction of emotional distress and defamation. (Third Am. Comp. (ECF No. 140.).) Roughly two weeks later, Wells Fargo filed its Answer, where it asserted affirmative defenses and a counterclaim for attorney fees and costs incurred in the action. (Answer (ECF No. 144.).)

Following the TAC, Wells Fargo brought a motion to compel discovery. (ECF No. 145). Oral argument on the motion was held on July 16, 2014. (ECF No. 151.) At oral argument, Baldin voluntarily dismissed her intentional infliction of emotional distress claim with prejudice. (ECF No. 154.) The court thereafter granted Baldin's motion to file a Fourth Amended Complaint ("FAC"), but also ordered Baldin to pay Wells Fargo's attorney fees incurred in

bringing the portion of Wells Fargo's motion to compel that pertained to the intentional infliction of emotional distress claim. (ECF No. 154.)

On July 3, 2014, Baldin filed her FAC, which contained a single claim for defamation. (ECF No. 159.)  Four months later, Wells Fargo filed a motion for summary judgment, seeking to dismiss Baldin's defamation claim and also requesting attorney fees and costs.  (ECF No. 186.)  In September 2015, the court granted Wells Fargo's motion for summary judgment. (ECF No. 203.)  The court, however, determined it was premature to grant Wells Fargo's request for attorney fees and costs and therefore denied the request with leave to renew.  (ECF No. 203.)

On October 1, 2015, Wells Fargo filed a motion for attorney fees and costs, seeking attorney fees in the amount of $129,429.86 and $2,599.55 in costs.  (Mot. for Att'y. Fees (ECF No. 205.).)  Wells Fargo seeks determination that it is entitled to attorney fees under the Deed of Trusts for all three properties.  (Mot. for Att'y. Fees, at 7 (ECF No. 205.).)

*Discussion*

Under Oregon law, the prevailing party is "entitled to reasonable attorneys' fees in addition to costs and disbursements" in an action based on a contract that specifically provides for an award of attorney fees to the prevailing party.  OR. REV. STAT. 20.096(1).  The first relevant inquiry, therefore, is whether the action at issue was based on a contract providing for prevailing party attorney fees. *See generally Copeland-Turner v. Wells Fargo, N.A.*, No. CV-11-37-HZ 2011, WL 5117877, at * 4 (D. Or. Oct. 25, 2011).

I. Wells Fargo's Request for Attorney Fees

Wells Fargo maintains that Baldin's claims are "inextricably intertwined with the rights and obligations of the parties as set forth in the trust deeds for each property." (Reply in Supp. of Att'y Fees, at 4.) The relevant language in all three Deeds of Trust states that if:

> Borrower fails to perform the covenants and agreements contained in this Security Instrument [or] there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding * * * to enforce laws or regulations), * * * then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument[.] * * * Lender's actions can include, but are not limited to: * * * appearing in court [and] paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument[.]

(Kruse Decl. Ex. 2, at 8-9; Ex. 4, at 7-8; Ex. 14, at 8.)

Wells Fargo thus argues that under the terms of the Deeds of Trust, Baldin has agreed to pay the attorney fees Wells Fargo incurred in the course of this lawsuit because the legal proceeding brought by Baldin had the potential to affect its rights in the property. Baldin, by contrast, argues that her claims against Wells Fargo were based not in contract but in tort and that "the core legal proceeding – [Wells Fargo's] defamation of [Baldin's] character through inaccurate negative credit reporting – does not constitute 'a legal proceeding that might significantly affect Wells Fargo's interest in the property.'" (Opp. to Mot. for Att'y Fees, at 6-7.) Therefore, Baldin asserts, there is no contractual right from which Wells Fargo can receive attorney fees. (Opp. to Mot. for Att'y Fees, at 6.)

When a claim is brought in tort, not to enforce the provisions of a contract, the contractual attorney fees provision is inapplicable. *Cascade Steel Fabricators, Inc. v. Citizens Bank of Or.*, 46 Or. App. 573 (1980). In *Cascade Steel*, the plaintiff brought an action for the

tort of bad faith. *Id.* at 575. The plaintiff, a bank customer who had previously obtained loans from the bank, was suffering financial difficulties and met with a bank officer to renegotiate and refinance its loans. *Id.* Five days after meeting with the bank officer, the bank closed the plaintiff down and took control of the inventory, equipment, and other collateral that secured the bank's loans. *Id.*

The plaintiff subsequently brought a tort action, arguing the bank had acted in bad faith by demanding payment without prior notice and foreclosing on the collateral after assuring the plaintiff further financing was imminent. *Id.* at 575-76. The court dismissed the claim, and the bank thereafter contended the security agreements executed by the parties entitled it to recover attorney fees as the prevailing party because the plaintiff's action was an action based on the security agreements which contained a provision for prevailing party attorney fees. *Id.* at 577. The plaintiff argued its claim was in tort. *Id.* The court agreed with the plaintiff that its claim was not based in contract because the plaintiff's claim was for bad faith, a tort, and did not seek to enforce any provision contained in the security agreements; thus, the contractual attorney fee provision did not apply. *Id.* at 577-78.

By contrast, when the substance of the complaint, even if styled as a tort, is the contract, the fee provision will apply. *Copeland-Turner*, No. CV-11-37-HZ 2011, WL 5117877 (D. Or. Oct. 25, 2011). In *Copeland-Turner*, the plaintiff brought an initial complaint in state court against Wells Fargo for breach of contract and wrongful foreclosure, among others, after his rental property was sold in a nonjudicial foreclosure sale. *Id.* at *1. Wells Fargo removed the case to the district court, and the plaintiff amended his complaint, pleading a single claim for

FINDINGS AND RECOMMENDATION        10                    {TJK}

conversion. *Id.* After Wells Fargo's motion to dismiss was granted, it sought a determination that it was entitled to attorney fees and costs pursuant to the promissory note and/or deed of trust. *Id.* Citing to language in the deed of trust similar to that in the deeds in this case, Wells Fargo argued that because the legal proceeding brought by the plaintiff affected its rights in the property, the plaintiff had agreed to pay attorney fees. *Id.* at *2. The plaintiff disagreed, arguing his claim against Wells Fargo was based not in the contract but in tort and, consequently, there was no contractual right for Wells Fargo to receive attorney fees. *Id.* at *3. The court sided with Wells Fargo and granted its motion for attorney fees, noting that while the plaintiff "styled" his complaint as one of tort, the plaintiff's theories of liability all went to whether Wells Fargo had a valid interest in the property and a right to foreclose. *Id.* at *6, *7. In other words, "the subject matter of the allegations in the Amended Complaint was the contractual loan transaction between Wells Fargo [] and [the] plaintiff," which allowed for attorney fees in such a case. *Id.* at *6, *7. Thus, the plaintiff's claim "attacked Wells Fargo's interest in the property," entitling Wells Fargo to attorney fees pursuant to the contractual loan transaction. *Id.* at *6.

Here Baldin's Complaint, FAC, and SAC included claims for breach of contract, wrongful foreclosure, quiet title, unjust enrichment, declaratory relief, and violations of the Fair Debt Collection Practices Act and Uniform Deceptive Trade Practices Act. The subject matter of these allegations dealt with the contractual loan transaction between Wells Fargo and Baldin. Baldin attacked Wells Fargo's interest in one or more of the properties by arguing Wells Fargo either had no interest or wrongfully foreclosed on the Cervantes Property or had wrongfully inflated the amount due under the mortgage contracts. Thus, as in *Copeland-Turner*, the

governing loan transaction documents allow Wells Fargo to recover attorney fees for such claims because Baldin's claims challenged Wells Fargo's interest in one or more of the properties.

The contractual loan documents were not the subject matter of Baldin's additional claims for intentional infliction of emotional distress, false light, violation of the Fair Credit Reporting Act, and defamation, however.  Like the plaintiff in *Cascade Steel*, Baldin, in making these claims, was not seeking to enforce any provision of the loan documents.  Rather, her theories of liability turned on whether Wells Fargo made untrue statements to CRAs that caused her harm.

Wells Fargo argues, however, that Baldin's claims for intentional infliction of emotional distress, false light, violation of the Fair Credit Reporting Act, and defamation more closely resemble the plaintiff's conversion claim in *Copeland-Turner* because, like the conversion claim, Baldin's claims had the potential to "significantly affect" Wells Fargo's interest in one or more of her properties.  Wells Fargo is incorrect for two reasons.

First, a claim for conversion is substantially different than claims for intentional infliction of emotional distress, false light, violation of the Fair Credit Reporting Act, and defamation.  A plaintiff who brings a claim for conversion argues the defendant wrongfully interfered with the plaintiff's rights in the property by improperly exercising dominion or control over the property.  *See, e.g., Mustola v. Toddy*, 253 Or. 658, 663-64 (1969) (setting forth the elements of conversion).  Consequently, in a conversion case, the court necessarily seeks to determine the parties' respective rights in the property at issue, as theories of liability center on whether or not the defendant had a valid interest in the allegedly converted property.

FINDINGS AND RECOMMENDATION        12                                {TJK}

By contrast, claims for intentional infliction of emotional distress, false light, violation of the Fair Credit Reporting Act, and defamation involve statements made by one party about the other or conduct by one party intended to cause the other party severe emotional distress. *See Starkey v. Experian Info. Solutions, Inc.*, 32 F. Supp. 3d 1105, 1108 (C.D. Calif. 2014) (stating that a plaintiff who wishes to make out a *prima facie* case under the Fair Credit Reporting Act must show the CRA reported false information about the plaintiff); *Delaney v. Clifton*, 180 Or. App. 119, 125-26 (2002) (stating the intentional tort of intentional infliction of emotional distress requires a showing that the defendant directed extreme and outrageous behavior at the plaintiff and did so with the intent to cause the plaintiff severe emotional distress); *Magenis v. Fisher Broad., Inc.*, 103 Or. App. 555, 558 (1990) (stating that the torts of false light and defamation require the plaintiff to prove the published information was not true). The central issues for the court to determine in such cases is not the parties' respective property rights but whether the defendant inaccurately reported or published material that was not true or whether the defendant directed extreme or outrageous conduct at the plaintiff which was intended to cause the plaintiff severe emotional distress.

The language Wells Fargo relies on – that the borrower is required to pay attorney fees in any legal proceeding that "might significantly affect" Wells Fargo's interest in the property – is language that pertains to a property interest, and Baldin's claims for intentional infliction of emotional distress, false light, violation of the Fair Credit Reporting Act, and defamation, unlike the conversion claim in *Copeland-Turner*, did not deal with Wells Fargo's interest in the property. Rather, Baldin's theories of liability dealt with whether Wells Fargo made untrue

statements to CRAs or whether Wells Fargo engaged in conduct specifically intended to cause Baldin severe emotional distress.

In sum, Wells Fargo's right to fees derives exclusively from the loan documents. *See Jewell v. Triple B. Enterprises, Inc.*, 290 Or. 885, 888-89 (1981) (stating that OR. REV. STAT. 20.096(1) only provides for prevailing party attorney fees if the contract so provides and the fees were incurred to enforce the provisions of the contract). *Copeland-Turner* involved a claim for conversion and therefore had the potential to "significantly affect" Wells Fargo's interest in the property, entitling Wells Fargo to attorney fees. Conversely, Baldin's claims for intentional infliction of emotional distress, false light, violation of the Fair Credit Reporting Act, and defamation did not have the potential to "significantly affect" an interest Wells Fargo possessed in any of the properties that were at issue in this case. Even if Baldin had prevailed on these claims, Wells Fargo would have retained its possessory interest in the properties. Because Wells Fargo's possessory interest in one or more of the properties had no chance of being affected, its argument that Baldin's claims for intentional infliction of emotional distress, false light, violation of the Fair Credit Reporting Act, and defamation had the potential to "significantly affect" Wells Fargo's interest in one or more of her properties necessarily fails.

Finally, Baldin is not seeking to enforce a contractual provision and, thus, the attorney fee provision in the loan documents does not apply. As the *Cascade Steel* court stated, a defendant is entitled only to attorney fees involving claims in which the plaintiff is seeking to enforce a provision of the contract. Baldin's claims for intentional infliction of emotional distress, false light, violation of the Fair Credit Reporting Act, and defamation do not rely on,

nor seek to enforce, a contractual relationship.  Instead, such claims derive from the common law or from statute.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) (discussing the common law tort of defamation); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153-54 (9th Cir. 2009) (explaining that the Fair Credit Reporting Act is a statute created by Congress); *Justice v. Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1126 (D. Or. 2015) (stating that intentional infliction of emotional distress is a tort derived from Oregon common law); *Dean v. Guard Publ'g Co.*, 73 Or. App. 656, 659 (1985) (recognizing false light as a common law tort).  Hence, the attorney fee provision found in the parties' contractual loan documents does not apply to Baldin's claims for  intentional infliction of emotional distress, false light, violation of the Fair Credit Reporting Act, and defamation, as Baldin did not bring these claims to enforce any provision in the loan documents.

> A.    *The Common Issues for Which Wells Fargo is Entitled Attorney Fees*

When a plaintiff brings multiple claims and certain claims fall under a contractual fee provision, the court is permitted to award attorney fees as to the claims that are subject to the contractual fee provision and not the others.  *See Newell v. Weston*, 156 Or. App. 371, 378-79 (1998) (stating "the party who prevails on claims that are subject to [the contract], not the party who prevails on all claims in the action," is entitled to attorney fees).  Moreover, "[w]hen a party prevails in an action that encompasses [] claim[s] for which attorney fees are authorized and [] claim[s] for which they are not, the trial court must apportion attorney fees," except when there are common issues. *Bennett v. Baugh*, 164 Or. App. 243, 247 (1999).  If there are common

issues, fees need not be apportioned because "the party entitled to fees would have incurred roughly the same amount of fees irrespective of the additional claim or claims." *Id.* at 248.

Wells Fargo is entitled to an award of attorney fees as to Baldin's claims for breach of contract, wrongful foreclosure, quiet title, unjust enrichment, declaratory relief, and violations of the Fair Debt Collection Practices Act and Uniform Deceptive Trade Practices Act because such claims attacked its rights in the properties. As to all other claims, however, Wells Fargo is not entitled to attorney fees because these claims were not based on contract nor did they have the potential to affect Wells Fargo's interest in the properties.

Nonetheless, until Wells Fargo's June 6, 2012, motion to dismiss, all of Baldin's claims involved common issues. To successfully rebut Baldin's claims, Wells Fargo needed to pursue common theories for all claims, namely, that Baldin failed to make tax payments, was delinquent on her payments for all three properties, and had defaulted on the Cervantes Note by improperly transferring the property. These theories, in turn, allowed Wells Fargo to argue Baldin had breached the contract, that it was permitted to foreclose on the Cervantes property, and that any adverse credit reporting to the CRAs was truthful and accurate. The record demonstrates the fees Wells Fargo incurred to challenge claims for which it is not entitled attorney fees were indistinguishable from the fees it incurred to challenge the claims for which it is entitled attorney fees.

The same is not true of the fees Wells Fargo incurred after the court's final ruling on March 4, 2013, on its motion to dismiss. The claims for which Wells Fargo is entitled to attorney fees were dismissed when this court granted in part Wells Fargo's motion to dismiss.

FINDINGS AND RECOMMENDATION        16                                    {TJK}

After that point, the only two remaining claims were for intentional infliction of emotional distress and defamation, claims for which Wells Fargo is not entitled attorney fees. In defending against those two claims, Wells Fargo could not have incurred fees in connection with claims for which it was entitled attorney fees, since such claims already had been dismissed. *See generally Freedland v. Trebes*, 162 Or. App. 374, 379 (1999) (stating that attorney fees petitioner incurred to prepare for trial on separate claims could not reasonably have been incurred to achieve success on a claim that was already achieved before the matter proceeded to trial). Consequently, Wells Fargo is not entitled to the attorney fees it incurred after the court granted in part its motion to dismiss on March 4, 2013.

> B.    *Hours of Attorney and Paralegal Time Remaining for the Court's Analysis*

Because Wells Fargo is entitled only to the attorney fees it incurred up to and including March 4, 2013, 290 hours of Wells Fargo's requested attorney and paralegal time have been eliminated from the court's analysis, and 190.80 hours of attorney and paralegal time remain for the court's evaluation.

II. Reasonableness of an Attorney Fee Request Under Oregon Law

Because the court has determined Wells Fargo is entitled to attorney fees incurred up to and including March 4, 2013 – the point in which its motion to dismiss was granted in part – the next inquiry is whether Wells Fargo's requested attorney fees during that period of time are reasonable. *See, e.g., Benchmark Nw., Inc. v. Sambhi*, 191 Or. App. 520, 523 (2004). When a party in a diversity action requests attorney fees, the court analyzes the party's fee request under ORS 20.075. *Oglesby v. W. Stone & Metal Corp.*, No. CV 99-492-BR, 2001 WL 34045884, at

FINDINGS AND RECOMMENDATION        17                        {TJK}

*1 (D. Or. Sept. 20, 2001).   ORS 20.075 includes two subsections, ORS 20.075(1) and 20.075(2), both of which list factors to be considered in analyzing a fee request.   The factors under ORS 20.075(1) relate primarily to parties' behavior during litigation, while the factors under ORS 20.075(2) relate primarily to the quality of the legal services at issue.   In *Oglesby*, Judge Brown characterized the fee request analysis under ORS 20.075 as follows:

> Section 20.075 mandates a two step inquiry.   First, under § 20.075(1), a court must consider eight nonexclusive factors when deciding whether an award for attorneys' fees is warranted.   If the court elects to award attorneys' fees pursuant to § 20.075(1), § 20.075(2) then requires the court to consider the factors identified in subsection (1) together with the eight factors set forth in subsection (2) when deciding the amount of any such award.   A court satisfies the requirements of § 20.075 by including in its order a brief description of or citation to the factors on which it relied when granting or denying an award of attorneys' fees.

*Id.* (citations omitted).   Because Wells Fargo is enforcing the terms of a contractual provision, ORS 20.096 mandates the court award attorney fees.   *See Jensen v. Miller*, 280 Or. 225, 232 (1977) ("The awarding of attorney fees pursuant to contractual provisions is made mandatory by statute, ORS 20.096").   Therefore, the court must consider the factors under ORS 20.075(1) and 20.075(2) to determine the reasonableness of Wells Fargo's fee request.

 *A. Factors Under ORS 20.075(1)*

 In assessing the reasonableness of a fee request, ORS 20.075(1) requires courts to consider the following factors:

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith, or illegal.
> (b) The objective reasonableness of the claims and defenses asserted by the parties.

FINDINGS AND RECOMMENDATION  18      {TJK}

(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount the court has awarded as a prevailing party fee under ORS 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

ORS 20.075(1).

In this case, many of the above factors are either neutral or irrelevant. Factors (a) and (b) have no bearing on the case, since there were no unreasonable claims made and no indication either party acted unreasonably, let alone recklessly, wilfully, maliciously, in bad faith, or illegally in their conduct during "transactions or occurrences that gave rise to the litigation." *In re Marriage of Niman*, 206 Or. App. 400, 418 (2006). Factor (c) is no barrier to an award because awarding attorney fees is merely enforcing the loan contracts agreed to by the parties. Factors (d) and (g) are irrelevant: neither party asserted meritless claims or defenses and the court did not award a prevailing party fee under ORS 20.190. Finally, Wells Fargo raises no additional considerations relevant under factor (h). The remaining two factors will be analyzed below.

                i.    <u>The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings and in pursuing settlement of the dispute</u>

When a party seeks attorney fees, "the court must consider the objective reasonableness and diligence of the parties and their attorneys during the proceedings generally and in pursuing

settlement of the dispute." *In re Marriage of Bidwell*, 173 Or. App. 288, 290 (2001). Baldin argues Wells Fargo acted maliciously during the proceedings by twice violating Judge Mosman's injunction order. However, as this court stated, "Wells Fargo's first infraction was a 'technical violation' due to a mistake with the Credit Reporting Division of Wells Fargo. . . . [S]uch a violation does not constitute malice or willful intent." (Findings and Recommendation, at 15 (ECF No. 199.).) As to the second violation, the court stated, "Wells Fargo inadvertently coded Baldin's account to restrict credit reporting through May 2013 only." (Findings and Recommendation, at 15 (ECF No. 199.).) Wells Fargo subsequently acted to remedy the error, and no future violations occurred. (Findings and Recommendation, at 15-16 (ECF No. 199.).) The evidence is not sufficient to show Wells Fargo acted unreasonably during the proceedings, and factor (e) is no barrier to an award.

Baldin also argues Wells Fargo acted unreasonably in pursuing a settlement of the dispute, in that Wells Fargo "never made a formal settlement offer. Instead, it [] engaged in costly litigation." (Baldin's Opp. to Mot. for Att'y Fees, at 5.) Wells Fargo responds that "[a]t several points in this litigation, counsel for Wells Fargo reached out to counsel for [Baldin] to discuss settlement and mediation." (Reply in Supp. of Mot. for Att'y Fees, at 6.) Wells Fargo points to its billing invoices, where numerous billing entries depict efforts to initiate and engage in settlement discussions. Baldin does not challenge these entries. The entries show both parties engaged in conversations regarding settlement on multiple occasions. The fact a formal settlement offer was never made is not dispositive because "[m]uch depends on the context in which the negotiations took place." *Barbara v. Parmenter Living Trust v. Lemon*, 345 Or. 334,

347 (2008).  The evidence does not support Baldin's claim that Wells Fargo acted unreasonably

in pursuit of settlement, and thus factor (f) is no barrier to an award.  The court turns next to the

factors under ORS 20.075(2).

      B.      *Factors Under ORS 20.075(2)*

      ORS 20.075(2) requires the court to consider the following factors:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
> (c) The fee customarily charged in the locality for similar legal services.
> (d) The amount involved in the controversy and the results obtained
> (e) The time limitations imposed by the client or the circumstances of the case.
> (f) The nature and length of the attorney's professional relationship with the client.
> (g) The experience, reputation and ability of the attorney performing the services.
> (h) Whether the fee of the attorney is fixed or contingent.

ORS 20.075(2).  Two of the ORS 20.075(2) factors are not relevant to this case.  Wells Fargo

makes no arguments concerning factors (b) and (e), and the court discerns no reason why these

factors affect Wells Fargo's fee award.  Thus, Wells Fargo claims that factors (a), (c), (d), (f),

(g), and (h) are relevant to the court's consideration of Wells Fargo's fee request.  However,

factor (h) is of no bearing because Wells Fargo's attorneys billed at fixed hourly rates.

*Alexander Mfg., Inc. Employee Stock Ownership and Trust v. Ill. Union Ins. Co.*, 688 F. Supp. 2d

1170, 1183 (D. Or. 2010).  The remaining factors will be applied to the court's analysis below.

      i.      Analysis of relevant factors under *ORS 20.075(2)*

      Wells Fargo acknowledges there were no complicated issues in this case, and the record

demonstrates none.  Therefore, the court will not consider this factor in its determination of the

reasonableness of Wells Fargo's fee request.  Wells Fargo argues, however, "a high level of familiarity with consumer protection statutes and financial regulations were required due to the various legal theories [Baldin] advanced."  (Mot. for Att'y Fees, at 8.)  The court agrees that litigating some of Baldin's claims required familiarity with consumer-protection statutes, though the issues were not novel by any means.  Next, the amount involved in the controversy was not insignificant.  At the time the court granted Wells Fargo's motion to dismiss, Baldin's Second Amended Complaint contained a prayer for $5,000,000.00 in economic damages, and Wells Fargo achieved substantial success, eventually prevailing on every claim.

In addition, Wells Fargo's attorneys appear to have excellent reputations and have considerable experience and ability.  Wells Fargo's lead attorney, Lee Nusich ("Nusich"), has been practicing law for over thirty-eight years, specializing in commercial real estate property foreclosures, financial institutions litigation, and commercial and business litigation.  (Kiolbasa Decl. ¶ 2.)  Attorney Brian Kiolbasa ("Kiolbasa") has been practicing for more than eight years and specializes in representing financial institutions in commercial and complex litigation.  (Kiolbasa Decl. ¶ 3.)

Given this background, Kiolbasa's rates are within the reasonable rates charged by other attorneys with similar skill and reputation in Portland, Oregon.  Nusich's rates, however, exceed those reasonable rates.  "The law is well established that the reasonable rate for legal services is 'to be calculated according to the prevailing market rates in the relevant community'"  *Atl. Recording Corp. v. Andersen*, No. CV 05-933-AC, 2008 WL 2536834, at *13 (D. Or. Jun. 24, 2008) (quoting *Blum v. Stetson*, 465 U.S. 886, 895 (1984)).  "The fee applicant has the burden of

producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community. . . ." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

The "bellweather" of attorney rates used by this court is the Oregon State Bar Economic Survey ("Economic Survey"). *McElmurry v. U.S. Bank Nat'l Assoc.*, No. CV 04-642-HA, 2008 WL 1925119, at *3 (D. Or. April 30, 2008). This court uses the most recent Economic Survey's "Hourly Billing Rate by Total Years Admitted to Practice" chart to find a reasonable rate based on an attorney's years of practice, and does not award higher rates without some justification for doing so. *Id.* at 15. The most recent survey is the July 2013 revision to the 2012 edition. *Oregon State Bar 2012 Economic Survey*, OREGON STATE BAR (2012), https://www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf; (Kiolbasa Decl. Ex. 2.) For attorneys with over thirty years of practice, the average hourly rate for Portland attorneys was $340, and the median was $350. (Kiolbasa Decl. Ex. 2, at 6.) For Portland lawyers with seven to nine years of experience, the average hourly rate was $258, and the median was $250. (Kiolbasa Decl. Ex. 2, at 6.)

Nusich and Kiolbasa billed at blended rates of $438.16 and $263.72, respectively. (Kiolbasa Decl. ¶ 7, Ex. 1.) Kiolbasa's claimed hourly rate falls near the median for lawyers with his years of experience, and the court accepts his rate as reasonable. Nusich's hourly rate, however, exceeds the relevant averages reflected above. Furthermore, when the court narrows its inquiry to practice area, Nusich's rate far exceeds the relevant averages. For instance, the average hourly rate for Portland attorneys engaged primarily in civil litigation representing

FINDINGS AND RECOMMENDATION        23                    {TJK}

defendants (excluding insurance defense) was $309, and the median was $275. (Kiolbasa Decl. Ex. 2, at 7.) Similarly, attorneys who practice business or corporate litigation saw an average hourly rate of $311, with a median rate of $300. (Kiolbasa Decl. Ex. 2, at 7.)

"The prevailing party must explain why the particular attorney deserves a rate at the high end of the spectrum for the work performed in th[e] particular case." *Copeland-Turner v. Wells Fargo, N.A.*, No. 3:11-cv-37-HZ, 2012 WL 92957, at *2 (D. Or. Jan. 11, 2012). Aside from Nusich's experience and extensive relationship representing his client, Wells Fargo provides the court with no explanation for a rate significantly higher than the average Portland practitioner with his years of experience in a case with relatively little complexity. In fact, while this case involved issues arising from consumer-protection statutes, many of the claims were not so based and the case was certainly not novel nor was it complex. Thus, higher-than-average rates are not reasonable in this case. *See, e.g., Knowledge Learning Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. CV-10-100-ST, 2011 WL 21333824, at *5-6 (D. Or. Apr. 19, 2011) (awarding median rate to specialized litigators where case was insufficiently complex). Of all the relevant rates, the $350 median rate for a Portland practitioner with over thirty years of experience is the highest. The court concludes this is a reasonable hourly rate for the work performed by Nusich. *See Copeland-Turner*, 2012 WL 92957, at *3 (applying the highest applicable median rate).

In addition to fees incurred by Nusich and Kiolbasa, Wells Fargo requests fees of $177.42 per hour for paralegal Diana Barker ("Barker") and $200 per hour for paralegal Beverly

Harmon ("Harmon").  (Kiolbasa Decl. ¶ 7.)  Harmon incurred no fees during the period prior to
March 4, 2013, so the court will not consider her fees.  (*See* Kiolbasa Decl. Ex. 1.)

"Although the OSB Survey does not include data on paralegal rates, this District has
found such rates reasonable where they do not exceed the average rate for a first-year associate."
*Prison Legal News v. Umatilla Cnty.*, No. 212-cv-01101-SU (D. Or. May 16, 2013).   The
average rate of an attorney in private practice in Portland with zero-to-three years of experience
is $182; the median rate is $175.  (Kiolbasa Decl. Ex. 2, at 5.)   The court finds the rate charged
by Barker, who has over a decade of experience working as a paralegal, to be reasonable, as her
rate roughly matches the average hourly rate of a first-year associate in Portland.   The court
awards Barker her requested rate.

*C. Reasonableness of the Hours Expended*

From the inception of this case until March 4, 2013, when Wells Fargo's motion to
dismiss was granted in part, Wells Fargo seeks 190.80 hours of work undertaken by two
attorneys and one paralegal.  (Kiolbasa Decl. Ex. 1, at 1-14.)  Specifically, Wells Fargo seeks
160.10 hours for Kiolbasa, 12.80 hours for Nusich, and 17.90 hours for Barker.  (Kiolbasa Decl.
Ex. 1, at 1-14.)   The hours requested by Wells Fargo are, for the most part, reasonable.
Nevertheless, there are some billing deficiencies that necessitate reductions. *Prison Legal News*,
2013 WL 2156471, at *7 ("even where, as here, the expended time is reasonable, the court may
still reduce the fee award for defects in the . . . motion for fees").

FINDINGS AND RECOMMENDATION       25                                    {TJK}

i.    Removal

Baldin filed this case in state court on March 7, 2012, and Wells Fargo removed it to this court on April 12, 2012. "Because removal is a completely voluntary choice by [the] defendant to change courts, requiring [the] plaintiff to pay for the time expended on the removal is not reasonable." *Copeland-Turner*, 2012 WL 92957, at *3. On March 28, 2012, Kiolbasa spent 0.5 hours preparing strategy for removal, for a motion to dismiss, and for a "plan of action" with Nusich. The court assumes "plan of action" refers both to the motion to the dismiss and removal and thereby assumes half the time was spent preparing a strategy for removal and half for the motion to dismiss. Consequently, the court allows 0.25 hours on that date and disallows the other 0.25 hours. On April 10 and April 12, 2012, Kiolbasa spent a total of 1.4 hours reviewing and revising Wells Fargo's removal notice. The court disallows this time.

ii.    Duplicative Expenditures

This court excludes time entries indicating more than one attorney performed the same task. *See Nat'l Warranty Ins. Co. v. Greenfield*, No. CV-97-1654-ST, 2001 WL 34045734, at *4 (D. Or. Feb. 8, 2001); *See also Malbco Holdings, LLC v. AMCO Ins. Co.*, No. CV-08-585-ST, 2010 WL 2572849, at *12 (D. Or. June 22, 2010) ("[H]aving more than one attorney involved in the case, which necessitates a certain amount of attorney conferencing, while understandable, makes it unreasonable to shift the charges for both attorneys to the other party"). Scrutiny of the time records submitted in support of Wells Fargo's fee motion reveals Kiolbasa and Nusich billed time on April 28 and April 29, 2012, respectively, reviewing former Defendant Northwest Trustee Services, Inc.'s motion for summary judgment. Additionally, both attorneys billed for a

FINDINGS AND RECOMMENDATION        26                            {TJK}

conference between the two of them on February 13, 2013, in which they analyzed the court's Findings and Recommendation and planned a strategy "going forward." (Kiolbasa Decl. Ex. 1, at 14.)  It is "always inappropriate to tax an opposing party with such duplicative expenditures." *Whitworth v. Nat'l Enterprise Systems*, No. CV 08-968-PK, 2010 WL 1924505, at *6 (D. Or. Apr. 21, 2010).  Therefore, Kiolbasa's time entries on April 29, 2012, and February 13, 2013, totaling 2.1 hours, will be excluded from the fee award.

### iii. Inadequately Specified Tasks

Wells Fargo submitted numerous time entries in which its counsel inadequately described their tasks.  This court has explicitly warned attorneys that the failure to explain the subject matter of a task "makes it nearly impossible to assess the reasonableness of the requested time" and that such time entries may be disallowed.  Message From The Court Regarding Attorney Fee Petitions; *Whitworth v. Nat'l Enter. Sys.*, No. CV 08-968-PK, 2010 WL 1924505, at *7 (D. Or. April 21, 2010).  For instance, on June 5, 2012, Kiolbasa states that he completed a conferral e-mail to opposing counsel but makes no mention of the subject matter of the e-mail.

Wells Fargo also submitted numerous time entries that are heavily redacted.  For example, many of the time entries for telephone conferences and e-mail correspondence are so redacted that there is no indication of the subject of the communication, making it impossible for the court to assess the reasonableness of the requested time.  Presumably, Wells Fargo would argue such redactions are necessary to prevent disclosure of attorney-client privilege or work-product material.  But Wells Fargo should have, and did, include adequate information about the work performed in other time entries without divulging attorney-client privilege or work-product

FINDINGS AND RECOMMENDATION        27                                {TJK}

material. Therefore, because the entries fail to adequately describe the task, the court excludes

from the fee award the following tasks, accounting for 12.70 hours of Kiolbasa's time and 0.10

hours of Nusich's time.

| Task | Attorney | Hours Claimed | Date | Page |
|------|----------|---------------|------|------|
| E-mail client [redacted] | Kiolbasa | 0.20 | 03/27/12 | E1, 1 |
| E-mail to [redacted] | Nusich | 0.10 | 04/27/12 | E1, 2 |
| Draft e-mails to [redacted] | Kiolbasa | 0.50 | 05/17/12 | E1, 3 |
| Respond to multiple e-mails with clients [redacted] | Kiolbasa | 0.60 | 06/04/12 | E1, 3 |
| Telephone conference with [redacted] | Kiolbasa | 0.40 | 06/04/12 | E1, 3 |
| Complete conferral e-mail to counsel M. O'Rourke and send same | Kiolbasa | 0.20 | 06/05/12 | E1, 3 |
| Draft e-mail to client [redacted] | Kiolbasa | 0.20 | 06/28/12 | E1, 4 |
| [Redacted] with client [redacted] | Kiolbasa | 1.10 | 06/29/12 | E1, 4 |
| [Redacted] to client [redacted] | Kiolbasa | 0.20 | 07/12/12 | E1, 5 |
| Draft e-mail to client [redacted] | Kiolbasa | 0.10 | 07/20/12 | E1, 6 |
| Telephone conference with | Kiolbasa | 0.20 | 07/26/12 | E1, 7 |

| Wells Fargo [redacted] | | | | |
|---|---|---|---|---|
| Review draft letter drafted my [sic] client [redacted] | Kiolbasa | 0.30 | 08/03/12 | E1, 7 |
| Review draft letter from Wells Fargo [redacted] | Kiolbasa | 0.40 | 08/13/12 | E1, 7 |
| Respond to inquiry from client [redacted] | Kiolbasa | 0.20 | 08/23/12 | E1, 8 |
| Telephone conference [redacted] with counsel [redacted] | Kiolbasa | 0.60 | 09/19/12 | E1, 9 |
| Respond to client [redacted] | Kiolbasa | 0.30 | 10/04/12 | E1, 10 |
| Contact client [redacted] | Kiolbasa | 0.20 | 10/22/12 | E1, 11 |
| Review e-mails provided by client and respond [redacted] | Kiolbasa | 0.30 | 10/23/12 | E1, 11 |
| Draft e-mail to client [redacted] | Kiolbasa | 0.10 | 10/24/12 | E1, 11 |
| Draft e-mail to client [redacted] | Kiolbasa | 0.10 | 11/21/12 | E1, 12 |
| Draft e-mail to client [redacted] | Kiolbasa | 0.20 | 11/28/12 | E1, 12 |
| Exchange e-mails with client [redacted] | Kiolbasa | 0.10 | 11/29/12 | E1, 12 |
| Revise declaration of [redacted] | Kiolbasa | 0.50 | 12/05/12 | E1, 13 |
| Exchange e-mails and review documents provided by client [redacted] | Kiolbasa | 0.60 | 12/10/12 | E1, 13 |

FINDINGS AND RECOMMENDATION        29        {TJK}

| | | | | |
|---|---|---|---|---|
| Review additional documents provided by client [redacted] | Kiolbasa | 1.30 | 12/11/12 | E1, 13 |
| Revise declaration [redacted] | Kiolbasa | 1.90 | 12/11/12 | E1, 13 |
| Review [redacted] e-mails from client [redacted] | Kiolbasa | 0.20 | 12/12/12 | E1, 13 |
| Draft response [redacted] | Kiolbasa | 0.10 | 12/12/12 | E1, 13 |
| Draft e-mail to FNMA counsel re [redacted] | Kiolbasa | 0.50 | 12/20/12 | E1, 13 |
| Telephone conference with counsel [redacted] | Kiolbasa | 0.20 | 12/20/12 | E1, 13 |
| Draft e-mail to client [redacted] | Kiolbasa | 0.20 | 2/13/13 | E1, 14 |
| Telephone conference with client [redacted] | Kiolbasa | 0.40 | 2/22/13 | E1, 14 |
| Draft e-mail to [redacted] | Kiolbasa | 0.20 | 2/22/13 | E1, 14 |
| Draft e-mail response to client [redacted] | Kiolbasa | 0.10 | 2/27/13 | E1, 14 |

D.    *Calculation of Attorney Fee Award*

After accounting for the above-mentioned deductions, 143.65 hours of Kiolbasa's time is awarded at $263.72 per hour ($37,883.38 total); 12.70 hours of Nusich's time is awarded at $350.00 per hour ($4,445.00 total); and 17.90 hours of Barker's time is awarded at $177.42 per

hour ($3,175.82 total).  Thus, the attorney fee calculation results in a total of $45,504.20, and the court recommends awarding Wells Fargo that amount in fees.

III.   Costs

Along with attorney fees, Wells Fargo requests compensation in the amount of $2,599.55 for costs incurred in its effort to defend against Baldin's claims.  The costs include a filing fee, court reporter fees, process server fees, and deposition transcript fees.  (Kiolbasa Decl.  ¶ 11.) Costs generally are awarded to the prevailing party in a civil action as a matter of course, unless the court directs otherwise.  FED. R. CIV. P. 54(d).  The court must limit an award of costs to those defined in 28 U.S.C. § 1920, unless otherwise provided for by statute.  *Grove v. Wells Fargo Fin. Ca., Inc.*, 606 F.3d 577, 579-80 (9th Cir. 2010).  In the Ninth Circuit, this rule creates a presumption in favor of awarding costs to the prevailing party; if a district court departs from the presumption, it must provide an explanation so the appellate court can determine whether the district court abused its discretion.  *See, e.g., Association of Mexican-Am. Educators v. Calif.*, 231 F.3d 572, 591 (9th Cir. 2000) (*en banc*) (If disallowing costs, the district court should "explain why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate or inequitable to award costs").  The trial court has wide discretion in awarding costs under FED. R. CIV. P. 54(d) and is "free to construe the meaning and scope of the times enumerated as taxable costs."  *Kelly v. Sears, Roebuck, and Co.*, No. 01-cv-1423-ST, 2004 WL 1824121, *3 (D. Or. Aug. 10, 2004).

Local Rule 54.1(a)(1) requires the prevailing party to provide the court with a "detailed itemization of all claimed costs" and "appropriate documentation."  Moreover, Local Rule

54.1(a)(2) requires the cost bill to "be verified as required by 28 U.S.C. § 1924." Section 1924 requires an affidavit that the items within the cost bill are correct, have been necessarily incurred in the case, and the services for which fees have been charged were actually and necessarily performed.

Baldin does not appear to object to Wells Fargo's requested costs or their reasonableness, and Section 1920 permits the court to tax filing fees and court reporter fees. *See, e.g., Aflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175 (9th Cir. 1990). Moreover, the Ninth Circuit, in *Aflex Corp.*, expressly stated that courts may award costs for deposition transcripts and private process servers' fees to the prevailing party. The court is thus permitted to tax Baldin for all of Wells Fargo's requested costs.

As to whether the costs were reasonable and necessary, pursuant to Local Rule 54.1(a)(2), Kiolbasa has submitted a declaration attesting to the fact that the costs incurred were reasonable and necessary for the prosecution of this case. (Kiolbasa Decl. ¶ 12.) Additionally, Kiolbasa submitted a supplemental declaration, attaching to it a receipt of payment for a filing fee, process server fee, as well as a receipt reflecting the cost of a court reporter and deposition transcript. (Kiolbasa Supplemental Decl. Exs. 1, 2 & 3.) Consequently, the court is satisfied Wells Fargo properly verified the cost bill, and, having reviewed Wells Fargo's requested costs, the court finds them reasonable and necessary for Wells Fargo's successful prosecution of this case. As such, Wells Fargo is awarded costs in the amount of $2,599.55, as requested in Wells Fargo's Motion for an Award of Attorney Fees and Costs.

*Conclusion*

Based on the foregoing, Wells Fargo's Motion for an Award of Attorney Fees and Costs (Dkt. No. 205) should be GRANTED in part and DENIED in part as follows:   The court recommends awarding Wells Fargo attorney fees in the amount of $45,504.20 and costs in the amount of $2,599.55.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due April 29, 2016.  If no objections are filed, a review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days afer the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 12th day of April, 2016.

JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS AND RECOMMENDATION        33                                    {TJK}